No. 6760.

SUCCESSION OF JEAN C. BOLLINGER. OPPOSITION OF PAUL AND MATHIEU
· BALLATIN.

The community formed by a man's second marriage can not be held liable for the
value of property belonging to a former community, sold by him during his
second marriage, unless it be proved that the proceeds of such property were
expended for the benefit of the second community.

The debt due by a father to his children by a former marriage, for their half of the
proceeds of the community property sold by him, is exigible against his suc-
cession, and its payment can not be defeated or delayed by any claim of usufruct
made by the surviving widow of his second marriage.

Where a legacy in full property left by a husband to his widow is reduced, under
article 1752 of the Civil Code to one of usufruct merely, the usufruct shall em-
brace one fifth of the husband's whole estate.

APPEAL from the Parish Court of St. Bernard Parish.  *Morales, J.*

*Sambola & Ducros* for opponents and appellees.

*Joseph Duvigneaud* for Widow Bollinger.

The opinion of the court was delivered by

DEBLANC, J.  Jean Christophe Bollinger died on the thirteenth of
January 1876.  He married twice : his first wife, Anne Marie Baudoin—
died on the first of December 1854, leaving as her legal representatives
two grandchildren—Jean Paul and Mathieu Ballatin.  On the twenty-
sixth of April 1855, four months and twenty-six days after the demise
of his first wife, he married Christine Solomé Keiffer, from whom he had
two children.

After that second marriage, three slaves belonging to the commu-
nity which had existed between the said Bollinger and his first wife,
were sold at auction for $1625, which he received.  His grandchildren
claim, as due to them, one half of the proceeds of said sale, and one half
of the price of movables left by their ancestor.

We have not found, in the record, the evidence of any sale of any
movable proven to have belonged to the first community above men-
tioned, and neither their alleged price, nor their appraised value can be
allowed.  As to the slaves, they were the common property of Bollinger
and his grandchildren ; but—though they were sold and paid for during
the existence of the second community—it was not shown that the price
paid for them was expended for its benefit, and—under the settled juris-
prudence of our State, that community can not be charged therewith.
10 R. R. 18 ; 2 A. 44 ; 11 A. 297 ; 22 A. 513 ; 26 A. 606.

There is no doubt, however, that one half of the price of those
slaves—eight hundred twelve dollars and fifty cents—is due to Jean Paul
and Mathieu Ballatin by the succession of Jean Christophe Bollinger,

13

and that the usufruct claimed by his surviving widow and under his will, can neither retard nor affect the payment of that claim.

Not only is the transcript prepared without care, but one of the most important documents introduced in evidence—the deceased's will—has not been copied in the transcript.    We learn from the parties' counsel and from the recital in one of the judgments appealed from, that a legacy from the deceased husband to the surviving widow has been reduced, in accordance with art 1752 of the R. C. C. from a legacy of property to one of usufruct.

.    In so far as it decrees that reduction, all the parties are disposed to acquiesce in the judgment of the lower court; but the widow complains of the clause in said judgment which limits her usufruct to exclusively the share of the deceased's estate, which accrues to the children of their marriage.    In this, she is right.    The very article of the Code relied upon by the counsel and the Court to reduce her legacy provides that, " *in no case shall the portion, of which the donee is to have the usufruct, exceed the fifth part of the donor's estate.*"

With the limitation placed upon it by the judgment, the usufruct allowed to the widow is not that which the parties' counsel and the Court recognize that she is entitled to, but only that which she would have had without the testament and under the law.    The legacy—this is conceded—was properly reduced and reduced to its legal proportion. As to the exercise of that right, it was improperly limited to the share inherited by the widow's children from the succession of their father, and —in the words of the Code—must be extended to the fifth part of the testator's estate.

It is, therefore, ordered, adjudged and decreed that the two judgments rendered and signed in the parish Court of St. Bernard, on the thirty-first of May 1877, be and they are hereby annulled, avoided and reversed, and—proceeding to render such judgments as should have been rendered by said Court—

It is ordered, adjudged and decreed that Jean Paul and Mathieu Ballatin be and they are hereby recognized as creditors of the succession of Jean Christophe Bollinger for eight hundred and twelve dollars and fifty cents, to be paid to them in due course of the administration of said succession, with five per cent per annum interest thereon from the thirteenth of January 1876 until paid, and that they be classed as such.

It is further ordered, adjudged and decreed that the legacy from Jean Christophe Bollinger to his surviving widow be and it is hereby reduced, from a legacy in full ownership, to one in usufruct, and that the right of usufruct herein and hereby granted to said widow be by her exercised and enjoyed on the fifth part of the nett balance which.

shall constitute, after its final settlement, the estate of Jean Christophe Bollinger.

It is further ordered, adjudged and decreed that, for the faithful discharge and fulfilment of her obligations as usufructuary, and only as regards that part of her usufruct which bears and which is to be exercised on the share of the aforesaid estate not inherited by her own children, the widow shall give security as required by law.

It is further ordered, adjudged and decreed that the costs of the appeal be paid by Jean Paul and Mathieu Ballatin, the costs of the lower Court by the succession of Jean Christophe Bollinger, and that all the rights of said grandchildren, as heirs of said deceased, are specially reserved.

And—inasmuch as the provisional account filed on the second of August 1876, by Mrs. Widow J. C. Bollinger, as testamentary executrix, has not been finally passed upon in the lower court,

It is further ordered, adjudged and decreed that this case be remanded to said court, to be proceeded with according to this decision. and according to law.