BELLAGIE I. NEWMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78580.  Promulgated January 14, 1938.

*J. V. Wolff, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

TYSON: This proceeding is for the redetermination of a deficiency in income tax for the year 1932 in the amount of $320.06. It is claimed by the petitioner that not only is there no deficiency, but that she has made an overpayment of income tax for 1932 in the sum of $284.37, exclusive of interest.

The only question in controversy is whether the agreed amount of $4,096.20, being the income from November 30, 1932, to and including December 31, 1932, derived from personal property formerly owned by the petitioner and decedent in community, or any part thereof, constitutes taxable income to the petitioner.

The facts were stipulated and in brief are as follows:

The petitioner is the widow of Harold W. Newman, late of New Orleans, Louisiana, who died testate November 30, 1932, leaving him surviving the petitioner and three sons, Harold W. Newman, Jr., Robert J. Newman, and Morris W. Newman. The will of the decedent appointed the petitioner executrix, "with full seizin and without bond", and provided further, in so far as pertinent here, as follows:

I bequeathe to my beloved wife, Bellagie I. Newman, in addition to her one-half interest in our community of acquets and gains, the entire disposable portion of my estate, in full ownership, with the exception of Twenty-five Thousand Dollars which I bequeathe to my son, Morris W. Newman, as an extra portion. I bequeathe to my wife the unlimited and undivided usufruct of my entire estate and also on the above stipulated legacy to my son Morris W. Newman, during her entire life-time.

The will of the decedent was probated and his estate administered in probate proceedings in the Civil District Court for the Parish of Orleans, State of Louisiana, in a proceeding entitled "Succession of Harold W. Newman." The only steps taken in such proceedings between the date of the death of the decedent and January 1, 1933, are as follows:

Petition for the probate of decedent's will, for the qualification of petitioner as executrix, and the appointment of a notary to take an inventory,

Probate of the will,

The appointment of such notary,

The commencing of the taking of the inventory,

The qualification of the executrix, and

The obtaining of an order to withdraw from the bank box of the decedent various interest coupons which belonged to decedent's mother, and in which the estate of the decedent had no interest but which were in his possession as his mother's agent.

A petition was filed in the above probate proceedings on September 8, 1933, by the petitioner and the three sons, wherein they accepted, simply and unconditionally, the succession of the decedent, and prayed that they be put and sent into possession of all the property left by decedent; that the petitioner be recognized as the surviving spouse in community with decedent, entitled, as such, to the ownership of an undivided one-half of all the community property; that she be further recognized as the legatee of the disposable portion under the last will of decedent and entitled, as such, to the ownership of an undivided one-third of one-half of all the property left by the decedent, less $25,000 cash bequeathed to Morris W. Newman, and

to the usufruct on such $25,000 and on the other undivided two-thirds of one-half, or two-sixths of such property; and that the three sons be recognized as the sole and only heirs of decedent, and entitled, as such, to the ownership of an undivided two-thirds of one-half, or one-ninth each, of all of the property left by the decedent, subject to the usufruct in favor of their mother, the petitioner herein.

The gross taxable income, for the period from November 30, 1932, the date of death of the decedent, to and including December 31, 1932, from the property formerly owned by the decedent and the petitioner in community is $4,096.20, and consists of the following items:

| | |
|---|---:|
| Interest on a promissory note paid December 28, 1932 | $585.00 |
| Dividend by DeSoto Building, Ltd., paid December 31, 1932 | 321.00 |
| Various interest coupons on bonds maturing December 1, 1932 | 3,190.20 |
| Total | 4,096.20 |

In addition to this taxable income, the property produced exempt income during such period represented by interest coupons due December 15, 1932, on state bonds. None of the above bond interest coupons were cashed by the executrix in 1932. The only cash which came into her possession in 1932 consisted of the above interest and dividend items of $585 and $321, respectively, together with the sum of $3,330.73, representing the decedent's cash in bank at the date of his death, which was transferred to the executrix on December 30. These three cash items were deposited in the Hibernia Bank & Trust Co. of New Orleans in an account entitled "Bellagie I. Newman, Testamentary Executrix." The petitioner did not withdraw any funds for any purpose from this account in 1932.

The respondent determined that the net income of the petitioner for the calendar year 1932 was $20,100.56, composed of the following items:

| | |
|---|---:|
| Net taxable income admitted by the petitioner | $15,701.36 |
| Loss on account of stock in Edgewater Gulf Co. becoming worthless | 303.00 |
| All of the net income from the property formerly owned by the decedent and the petitioner in community from November 30, 1932, the date of the death of decedent, to and including December 31, 1932 | 4,096.20 |
| Total | 20,100.56 |

The petitioner included one-half of the above income of $4,096.20 or $2,048.10, in her original 1932 income tax return, but now claims that such amount does not constitute income to her.

The petitioner paid on August 3, 1934, as income tax for the calendar year 1932, the sum of $822.32, plus $66.46 as interest thereon, which payment was made within two years of the filing of the petition herein on February 20, 1935.

Nothing was paid or credited during the taxable period by the executrix to petitioner as a legatee of decedent or as usufructuary under the will.

The petitioner sustained a loss of $303 in the year 1932 on account of the stock of the Edgewater Gulf Co. becoming worthless.

The petitioner, under the will of her husband, was bequeathed in "full ownership" the entire disposable portion of his estate, less $25,000 bequeathed to one of their sons, and the unlimited and undivided usufruct of his entire estate, including the $25,000 bequest to the son, during her life. A "usufruct" is defined in article 533 of Dart's Civil Code of Louisiana, 1932, as "The right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing." Under this definition, the usufruct in the personal property, the income from which is here involved, was, in effect, the equivalent of a life estate as known at common law.

There are two questions presented, the first of which is, Did the seizin and right of possession of decedent's community interest in such personal property, the usufruct therein bequeathed to petitioner by the will of decedent, and the income therefrom received during the first month of the administration of the succession, or estate, pass to and vest in the petitioner individually, as respondent claims it did, or did the seizin and right of possession of such property and usufruct and such income therefrom vest in her as the executrix named in the will, and qualified as such by the proceedings in the probate court, as is claimed by petitioner? This question is presented by the issue of whether or not the respondent erred in his determination of a deficiency based upon his finding that the tax due on such income, in the amount of $2,048.10, was due from petitioner individually.

The petitioner contends that section 162 (c) of the Revenue Act of 1932 [1] is applicable here, and that, since no part of such income was either "properly paid or credited" during the taxable period by herself as executrix to herself as an individual and legatee, such income is not taxable to her individually. The respondent, however, contends that such section is not applicable here as the income

[1] The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

* * * * * * *

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

involved does not represent "income received by estates of deceased persons during the period of administration or settlement of the estate" (sec. 161 (a) (3), Revenue Act of 1932 [2]); that none of the interest of decedent in the community property passed to the executrix, but that such interest and the right to the income therefrom passed, under the laws of Louisiana and the provisions of the will, immediately upon the death of the husband, to the petitioner as the survivor of the community and as usufructuary; that, whether or not the income was received and held by her as executrix, it belonged absolutely to her individually as soon as it was produced, and therefore is taxable to her.

The contention of respondent, that the property bequeathed petitioner vested in her immediately upon the death of her husband and that the income therefrom belonged to her individually as soon as it was produced rather than to her as executrix, is based upon the propositions, first, that articles 940, 941, and 942 of the Civil Code of Louisiana, in effect, so provide, and, second, that the administration of the estate was unnecessary, and consequently inoperative, because, he asserts, no debts against the estate are shown to have existed.

Both propositions are settled adversely to respondent's contention and favorably to that of petitioner, by the opinion in the case of *Succession of Serres*, 66 So. 342, in which the widow, and an heir named as a beneficiary in the will of decedent, opposed the application of the testamentary executor to be confirmed as such on the grounds, *inter alia*, that the heir was entitled to enter into immediate possession of the property bequeathed her in the will, without the intervention of an administration, and, further, that an administration was unnecessary because there were no debts of the succession, or estate. The Supreme Court of Louisiana held that the heir opposing the confirmation of the testamentary executor was not entitled to receive direct, or to be put into possession of, the property bequeathed her in the will, and that the testamentary executor was entitled to be confirmed regardless of whether or not there were debts of the estate. The court, after citing and discussing various articles of the Civil Code and Code of Practice of Louisiana, as well as prior decisions of that court relating to executors and their status with regard to successions or estates, stated, *inter alia*, as follows:

The office and seizin of the executor enable him therefore to dispose of the title and to control the possession of all the property of the succession and

---

[2](a) APPLICATION OF TAX.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; \* \* \*

the title and seizin of the heirs are among the rights that may be thus disposed of and controlled. Those rights must yield to the paramount authority and rights of an executor; and the only way in which the heir can resist the executor is, not by relying on his own title and seizin, but by taking away from the executor the seizin which the testator and the law have conferred upon him, a privilege which the heir may exercise on complying with conditions imposed by Articles 1671 and 1012 of the Civil Code. * * * We conclude, therefore, that the dictum in the opinion in *Succession of Dupuy*, to the effect that "the seizin of the executor is a fiction of law which does not interfere with the legal possession of the heir," is misleading and that the law is correctly interpreted in the opinion of *Bird* v. *Succession of Jones* in the statement that: "The actual seizin of an executor is something distinct from and paramount to the fictitious seizin which, it is said, is vested in the heir immediately upon the death of the ancestor."

Articles 1671 and 1012 referred to in the above excerpt from the Serres opinion are set out by footnote.[3]

With special reference to the question of the necessity of the existence of debts against the estate in order to justify the confirmation of a testamentary executor, the court discussed various probable reasons why a testator should desire to have an executor of his estate even though he owed no debts, nor would owe any at the time of his death, and concluded that the question of the necessity or propriety of appointing an executor was one to be decided solely by the testator as a right conferred upon him by law, stating, *inter alia*, as follows:

It is not true that the sole duty of an executor to whom the seizing of an estate has been given, is to pay the debts and deliver the legacies; but on the other hand those duties, so far as values are concerned, may be, and often are, of less importance than the duty of delivering the balance or universality of the estate to the heirs. * * * Whether or not, therefore, the debts of this succession were of such a character as to have required the appointment of an administrator, if there had been no will, we are of the opinion that the executor appointed by the testator was entitled to be confirmed by the court.

Cf. *Succession of Serres, supra, J. H. Tippett, Administrator*, 25 B. T. A. 69, and authorities cited therein; *Garrett J. Donnelly et al., Executors*, 31 B. T. A. 577; *Ida Stephenson*, 33 B. T. A. 252.

The case of *Schreiber* v. *Beer's Widow and Heirs*, 91 So. 149, is a decision of the Supreme Court of Louisiana, chiefly relied on by respondent as supporting his contention that such property of de-

---

[3] ART. 1671—The heirs can, at any time, take the seizin from the testamentary executor, on offering him a sum sufficient to pay the movable legacies and on complying with the requirements of Article 1012.

ART. 1012—In obtaining possession of the effects of a succession, the heirs shall not be permitted, under any pretense whatsoever, to have an actual delivery of any property of such succession which may be in suit or to receive any money of such succession when there shall be claims thereon pending in court, unless they previously give bond with good and sufficient security, if the plaintiffs in such suits require it; which security shall be one-fourth over and above the amount of the claims for money thus claimed, or of the appraised value of the property in suit, which estimation shall be made by two appraisers appointed by the judge.

cedent as was disposed of by his will and the income therefrom passed directly to petitioner in her individual capacity, and not to her in her capacity as executrix. In that case suit was instituted against his succession, or estate, to revive a judgment obtained against deceased in his lifetime and against his widow, individually, as survivor in community, and his children, individually, as his heirs, for the debt represented by the judgment. The petition instituting the suit failed to allege that the individual defendants had respectively accepted the community and the succession, as provided by statute law of Louisiana. Because of this failure to allege such acceptance an exception, or demurrer, to the petition was sustained by the lower court, and on appeal to the Supreme Court of Louisiana this action of the lower court was sustained in so far as it held that the petition disclosed no cause of action for a personal judgment against the widow and heirs of the deceased judgment debtor, but in so far as it held that the petition disclosed no cause of action against the "succession", the holding of the lower court was reversed. The Supreme Court of Louisiana, in reaching this conclusion after consideration of the identical articles of the Civil Code of Louisiana relied on by respondent, said, *inter alia* (p. 155):

Articles 940, 941, 942 and 1014 of the Civil Code declaring, substantially, that an heir, being invested with seizin or the right of possession of the estate by the mere operation of law immediately at the death of the ancestor, is considered the heir so long as he has not renounced the succession, must be read in connection with Article 946, declaring that, although the succession is acquired by the heir at the moment of the death of his ancestor, the heir's rights nevertheless remain in *suspense* until he decides whether he would accept or renounce the succession.

The articles referred to in this quotation from the opinion of the court are as set out by footnote.[4]

---

[4] ART. 940—A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds.

This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.

ART. 941—The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it.

Thus children, idiots, those who are ignorant of the death of the deceased, are not the less considered as being seized of the succession, though they be merely seized of right and not in fact.

ART. 942—The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession.

ART. 1014—He who is called to the succession, being seized thereof in right, is considered the heir, as long as he does not manifest the will to divest himself of that right by renouncing the succession.

ART. 946—Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it.

If the heir accept, he is considered as having succeeded to the deceased from the moment of his death; if he rejects it, he is considered as never having received it.

It is obvious that the *Schreiber* case not only affords no support for the respondent's contention that the property and income here involved was that of the petitioner, individually, and passed to her directly in her individual capacity rather than in her capacity as executrix, but, on the contrary, constitutes a strong authority against such contention.

The other Louisiana decisions cited by respondent in support of his contention are not in point.

The foregoing authorities establish the principle that a decedent's one-half interest in personal property owned by the community, from which character of property the income here involved is derived, passes to and is held by the executor, as such, and not to the heirs or legatees directly, and such principle also obviously applies to the usufruct in such property. *Succession of Bollinger*, 30 La. Ann. 193; *Succession of Romero*, 8 So. 632. Cf. *Le Goaster* v. *Lafon Asylum*, 99 So. 22.

From these authorities it clearly appears that the interest of petitioner as an individual and legatee, in contra-distinction to her interest as executrix, in that part of the disposable property owned by decedent at the time of his death which was bequeathed to her absolutely, as well as in that other part of decedent's property in which she was bequeathed the usufruct, passed to her as executrix and was held by her in that capacity at the time she, as such executrix, received therefrom the income which is here involved. It necessarily follows that the income from such property during the taxable period was also received and held by her in her capacity as executrix and not in her individual capacity as legatee and usufructuary.

We have found as a fact that nothing was paid or credited, during the taxable period, by petitioner as executrix to herself as legatee or usufructuary under the will of decedent, and, furthermore, it may be noted that such payment or credit could not have been legally made under article 977 of Merrick's Revised Civil Code of Louisiana,[5] since the acceptance provided for in that article was not made by petitioner as legatee and usufructuary until September 28, 1933, several months after the end of the taxable period.

The respondent erred in his determination of a deficiency against the petitioner, such determination being based upon the income from that one-half of the community property owned by decedent at the time of his death.

---

[5] ART. 977—No one can be compelled to accept a succession, in whatever manner it may have fallen to him, whether by testament or the operation of law. He may therefore accept or renounce it.

It shall not be necessary for minor heirs to make any formal acceptance of a succession that may fall to them, but such acceptance shall be considered as made for them with benefit of inventory by operation of law, and shall in all respects have the force and effect of a formal acceptance.

Having disposed of the first question, there remains the second one to be answered, i. e., Did that one-half of the community property belonging to the surviving wife at the time of decedent's death and the income therefrom during the one month of administration, as well as that one-half of the community property belonging to the deceased husband at the time of his death, pass to the executrix as contended by petitioner? This question is presented by the contention of petitioner to the effect that the one-half interest in the community property owned by her at the time of decedent's death, as well as that one-half interest owned by decedent, passed into the administration of the estate and was held by her as executrix and not by her individually; that the income therefrom is, therefore, taxable to her as executrix and not to herself individually; and that in returning and paying tax as an individual on such one-half interest she made an overpayment in the amount of the tax so paid.

The case of *Festivan* v. *Clement*, 66 So. 304, was one in which the children and heirs of A. J. Festivan and his first wife, who predeceased him, sought to enjoin the sale of the whole of a certain tract of land which the executor of Festivan's estate was advertising for sale under an order of the probate court for the purpose of paying Festivan's debts. The petition alleged, *inter alia*, that the land had been owned in community by Festivan and his deceased wife, mother of plaintiffs; that plaintiffs as heirs of their deceased mother inherited a one-half interest in the land; and that the whole of the property could not be sold until their interest was ascertained by judicial investigation followed by partition. The defendants interposed several exceptions to the petition, among them one of "no cause of action." The Supreme Court of Louisiana reversed the lower court by ordering that the exception of "no cause of action", which was the only one considered in the opinion, be overruled and remanded the cause to the lower court for decision on the merits. The court said, *inter alia:*

According to the allegations of the petition, the plaintiffs and the succession of Festivan are the joint owners of the tract of land in controversy. The plaintiffs, as joint owners, are entitled to partition in kind of the property, if practicable, and if not, to a partition by licitation, in which they would be entitled to one-half the net proceeds of the sale. All of these rights would be defeated by the proposed probate sale of the tract of land as the property of the succession. * * *

It is not disclosed by the petition that the first community owed debts either to the surviving husband, or to third persons. Hence, the petition discloses a perfect legal title in the plaintiffs to an undivided half interest in and to the tract of land in question. * * * Plaintiff's father became their coproprietor with power to sell *only* his undivided half interest in the community property. * * *

When the father died years later his half interest and no more passed into his succession. The other half interest belonged to the plaintiffs and the

Probate Court had no jurisdiction to order its sale to pay the debts of the deceased. * * *

The petition alleges that the probate sale was ordered "for the purpose of paying off the debts of the deceased, A. J. Festivan." As the first community was dissolved in 1874, its debts, if any, have long since been prescribed. There is no presumption that the first community owed debts. Hence, the cases holding that community property may be administered in the succession of the husband for the purpose of paying community debts have no application to the facts of the case before us.

As the suit was dismissed on the exception of no cause of action it is necessary to remand the case to the Court of Appeals for decision on the merits. * * * It is now ordered that the exception of no cause of action be overruled and the cause be remanded.

See also *Hewes* v. *Baxter*, 16 So. 196; *Verrier* v. *Lorio*, 19 So. 677. These authorities clearly establish the principle that, except in cases where there are community debts, the interest in the community property of the surviving member does not pass to or under the control of the executor of the deceased member's estate.

This record is entirely devoid of any showing that there were any debts of the community, and, applying the principle established by these authorities, we conclude that the one-half interest in the community property owned by the petitioner as the survivor in community was not transmitted to or held by her in her capacity as executrix of the estate of her deceased husband, that consequently the income therefrom was properly taxable to her in her individual capacity, and that in paying same she made no overpayment.

The petitioner cites only one case in support of her contention that the one-half interest in the community property owned by her as the surviving wife and member in community passed to and was held by her as executrix of her husband's estate, that case being *Bronson* v. *Balch*, 19 La. Ann. 39, which announced the principle that "the administration of the succession of the deceased husband involves with it the administration of the community and the executor or administrator may rightfully cause the community property to be sold to pay the debts of the succession." It is apparent that the pronouncement of the court in this case does not support this contention of petitioner for the reason that the principle announced by it is identical with that of which it is said in the much later *Festivan* case, *supra*, that "the cases holding that community property may be administered in the succession of the husband for the purpose of paying community debts have no application to the facts before us," which facts, as in the instant case, failed to show the existence of community debts.

It was stipulated by the parties that the petitioner sustained a deductible loss in the amount of $303 in the year 1932. Effect will be given to this stipulation upon recomputation under Rule 50.

*Decision will be entered under Rule 50.*