Estate of Felix J. Dreyfous, George A. Dreyfous and F. Julius Dreyfous, Testamentary Executors v. Commissioner.
Estate of Felix J. Dreyfous v. Commissioner
Docket No. 31700.
United States Tax Court
1952 Tax Ct. Memo LEXIS 96; 11 T.C.M. (CCH) 911; T.C.M. (RIA) 52270; August 29, 1952
George A. Dreyfous, Esq., and E. A. Kalinski, Esq., for the petitioner. John W. Alexander, Esq., and D. Z. Cauble, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: The estate taxes determined to be due in the deficiency notice amount to $31,840.25. In addition, by amendment to answer, respondent seeks an increase in the deficiency of $3,978.60. Petitioner claims an overpayment of $2,677.94. Petitioner having conceded an issue with respect to income accrued at decedent's death, the primary remaining question is whether a claim to income of property of decedent's deceased wife of which he was "usufructuary" or life tenaut under Louisiana law, earned between the wife's death and decedent's acceptance of the legacy, constituted a debt *97 due decedent at his own death and is thus includible in the gross estate. All of the facts were stipulated. They are hereby found. Decedent, Felix J. Dreyfous, domiciled in New Orleans, Louisiana, died on November 15, 1946, testate, and George A. Dreyfous and F. Julius Dreyfous qualified as testamentary executors of his estate. An estate tax return was filed with the collector for the district of Louisiana at New Orleans. Decedent was executor of the estate of his predeceased wife, Mrs. Julia Seeman Dreyfous, who had died at their domicile in New Orleans on May 6, 1944, testate, and he administered her estate until August 26, 1946. Her holographic will provided in part as follows: "Third - I give and bequeath to my devoted and faithful husband Felix Jonathan Dreyfous the usufruct and enjoyment during the term of his natural life, of the rest and residue of my estate and direct that no security be required of him as usufructuary. Fourth - Subject always to the usufruct bequeathed to my husband, their father, I give and bequeath to my four children, George, Julius, Caroline and Ruth my residuary estate to be equally divided among them, share and share alike. * * * "Codicil
*98 "Subject to the life usufruct bequeathed to my husband Felix J. Dreyfous in the foregoing will, I give and bequeath to each of my grandchildren alive at the time of my death the sum of ten thousand ($10,000) Dollars but under no circumstances shall the legacy be due or payable to any of them until he or she shall have attained the full age of thirty one years. * * *" Decedent in 1944 and 1945 filed various pleadings in the probate proceedings wherein he declared that he had not yet determined whether or not he would accept this usufruct. A petition was filed on August 26, 1946, in the Civil District Court for the Parish of Orleans, which stated: "ARTICLE V. That Felix Jonathan Dreyfous, Testamentary Executor herein, has completed the administration of the succession of the deceased and has discharged all debts due by her succession and all particular legacies made by said deceased. * * *
"ARTICLE VII. That petitioners George A. Dreyfous, Felix Julius Dreyfous, Mrs. Caroline Dreyfous wife of Leon C. Weiss and Ruth Dreyfous accept the succession of the deceased purely, simply and unconditionally; * * *
"ARTICLE VIII. That the estate of the deceased comprises *99 her undivided one-half community interest in the property which belonged to the community which existed between her and petitioner Felix Jonathan Dreyfous, and of her seperate property, described in the inventories herein taken, and remaining in the hands of Felix Jonathan Dreyfous, Testamentary Executor"; * * *
"ARTICLE IX. * * *
(a) That Felix Jonathan Dreyfous be recognized as surviving spouse in community of his deceased wife, Mrs. Julia Seeman Dreyfous, and as a legatee under her last will and testament and the codicils thereto, and, as such, entitled to the ownership of an undivided one-half of the hereinafter mentioned property belonging to the community which existed between them and the unufruct of the other one-half thereof, and to the usufruct of the hereinafter mentioned separate property of the said late Mrs. Julia Seeman Dreyfous;" On August 26, 1946, the Judge of the Civil District Court of Louisiana entered a judgment which provided, in part, as follows: "It is ordered, adjudged and decreed that Felix Jonathan Dreyfous be, and he is, hereby, recognized as surviving spouse in community of his deceased wife, Mrs. Julia Seeman Dreyfous, and as a legatee *100 under her last will and testament and the codicils thereto, and, as such, entitled to the ownership of an undivided one-half of the hereinafter mentioned property belonging to the community which existed between them and the usufruct of the other one-half thereof, and to the usufruct of the hereinafter mentioned separate property of the said late Mrs. Julia Seeman Dreyfous; "It is further ordered, adjudged, and decreed that George A. Dreyfous, Felix Julius Dreyfous, Mrs. Caroline Dreyfous wife of Leon C. Weiss, and Miss Ruth Dreyfous be, and they are, hereby, recognized as sole forced heirs at law of the said late Mrs. Julia Seeman wife of Felix Jonathan Dreyfous, and as residuary legatees under her last will and testament and the codicils thereto, and, as such, entitled, in the proportion of an undivided one-fourth each, to her estate, consisting of an undivided one-half of the community property hereinafter mentioned, subject to the usufruct in favor of Felix Jonathan Dreyfous, and of her separate property hereinafter mentioned, subject to the usufruct in favor of Felix Jonathan Dreyfous; * * *
"It is further ordered, adjudged and decreed that the said Felix Jonathan Dreyfous, *101 George A. Dreyfous, Felix Julius Dreyfous, Mrs. Caroline Dreyfous wife of Leon C. Weiss, and Miss Ruth Dreyfous, in the abovementioned proportions and the aforesaid capacities, and in the manner hereinabove set forth, be, and they are, hereby, sent into possession of the community and separate property described in the inventories herein taken and remaining in the hands of Felix Jonathan Dreyfous, Testamentary Executor * * *." Decedent as executor filed income tax returns for the Estate of Mrs. Julia Seeman Dreyfous showing all estate income to have been received by her estate; for the same periods he filed income tax returns for himself showing his own income and did not include therein any estate income. The sole issue revolves about a determination by the Commissioner in the following language: "* * * that the universal legatees of the succession [remaindermen] of Mrs. Julia S. Dreyfous [decedent's deceased wife] as at November 15, 1946, [the date of decedent's death] owed to Felix Jonathan Dreyfous [decedent] the sum of $72,118.88; therefore, "Other Miscellaneous Property", Schedule F of the estate tax return, Form 706, in the amount of $14,925.68 should be increased *102 by $72,118.88." Although the deficiency notice does not say so, the parties appear to agree, and the case is presented on the theory, that this indebtedness arose by reason of income from the property left to decedent as "usufructuary" of his deceased wife. Since the parties accept it, we proceed on the same assumption. The legal question suggested by the respective contentions is whether, as petitioner asserts, Bellagie I. Newman, 37 B.T.A. 72, applies to an estate tax situation or is limited as respondent implies to the income tax problem there presented. The factual backgrounds are the same: In both, the surviving spouse of a Louisiana decedent as "usufructuary" [1] became entitled to an interest in the estate; in both the problem is concerned with income arising between decedent's death and the receipt of the property by the usufructuary as such, since in both the surviving spouse went into possession as executor; but in Bellagie I. Newman, supra, the question was whether the spouse was taxable on the income, whereas in the present case there is no such question and no such contention. Petitioner's decedent, the surviving spouse, having subsequently died, *103 the issue here is whether the income in dispute, or rather a claim to it, became an asset of this decedent's estate and should be included as such. We must begin with the elementary proposition that the income of a decedent's estate during administration is taxable to the estate and not to the beneficiaries unless it is "properly paid or credited during such year to any legatee, heir, or beneficiary * * *." Section 162 (c), Internal Revenue Code. [2] In the Newman case it was held under Louisiana law, as it would have to be here, that until the legacy was accepted no part of the income could "properly" be paid to the legatee. *104 It does not follow, however, that the provisions of section 162 (c), upon which the Newman case was premised, prevent paying to an heir or legatee subsequently any estate income earned during administration. True, having once been taxed to the estate, it would lose its character as income, and would not, upon such payment, again be taxable to the recipient. Elnora C. Haag, 19 B.T.A. 982, affirmed (C.A. 7), 59 Fed. (2d) 516; Ethel S. Garrett, 45 B.T.A. 848. But if it were his property, or if a claim to it had value, it could be a part of his assets and undoubtedly would be so for such purposes as bankruptcy or creditors' proceedings. [3] We see no other reason why on a similar approach it should not become a part of the gross estate of a decedent. The Newman case did not, of course, hold otherwise. *105 There would hence be an interesting and complicated question of Louisiana law still to be decided - whether once the decision to accept a usufructuary legacy has been taken its effects are antedated to the death of decedent as they are expressly made to do in the case of an "heir." [4] And the Louisiana case of Schreiber v. Beer's Widow and Heirs, 91 So. 149, upon which the Newman opinion largely turns, unfortunately furnishes no assistance here, where the question partly concerns the devolution of personal property, as it did, to be sure, in the Newman case, but where the ultimate, and not intermediate, right to the income is involved. Nor have we been referred to any other Louisiana authority satisfactorily disposing of the question. For while petitioner's *106 contention is that a demand must be made for a usufructuary legacy [5] that seems to be unnecessary where the legatee is already in possession, [6] and his possession as executor appears to be as effective as though he held in his individual capacity. [7] Since decedent acquired control of all of the assets of his deceased wife and of the community in his capacity as executor almost at her death, demand may well have been superfluous. *107 These are questions which, however, we find it unnecessary to decide. On this record, the issue is not so much one of law as of fact. While a legatee might be entitled to assets so that they would remain his and pass as his property when he dies, it seems equally clear that he could dispose of them in his lifetime and if so they would not then be a part of his estate - at least unless the transfer were of a sort enumerated among those inter vivos transactions which the statute specifically covers. Section 811 (c), (d), Internal Revenue Code. In this respect the situation is different from income tax problems, where no anticipatory assignment of income belonging to one can validly be made to another, Lucas v. Earl, 281 U.S. 111, a principle which might have applied in the Newman case, but not here. And there is no present suggestion of a transfer intended to take effect at death or anything of that sort. The deficiency notice refers in this connection, as we have already had occasion to note, only to a debt due from "the universal legatees" to decedent. Whether this debt was actually owing at that time is hence the only issue posed - an issue *108 which has, as we have said, become one of fact. In this connection the Court proceedings of August 26, 1946, cannnot be disregarded. Whatever decedent's rights or claims against his children, the remaindermen, he distinctly and explicitly relinquished them by his petition and account. And the other parties - and the Court - accepted his action. This proceeding may have been significant as a determination of the applicable state law, or of the pre-existing rights of the parties, cf. In re Rhodes' Estate (C.A. 3), 174 Fed. (2d) 584, and we do not refer to it as such. But it could not have been otherwise than a transfer or relinquishment as of that time of such rights or claims, if any, as decedent may then have had. His actions could not have had less effect than a valid deed of gift. To confirm this it needs only to consider what would be the consequence had decedent subsequently attempted to recover on an indebtedness as to which he had represented in his petition that he had "completed the administration of the succession of [his wife] and has discharged all debts due by her succession * * *"; had induced his children to "ratify and approve each and every act and *109 deed" performed by him; to which he annexed inventories of the "estate of the deceased"; and as to which he prayed that he and his children in their capacities equivalent to life tenant and remaindermen "be sent into possession of the property described in the inventories * * * and remaining in [his] hands * * *." We cannot conceive the possibility that any such claim on his part would have been given the slightest consideration; and if that be so, it could not have formed a part of his estate at his death. We conclude that in determining that a claim against the remaindermen of $72,000 or any other amount existed as an asset of decedent at the time of his death respondent was in error. The conclusion is not different with respect to the issue affirmatively raised by respondent's answer, which merely seeks to add to the claim against the remaindermen income attributable to the deceased wife's separate property for the same period. What we have said applies to this also. By the same token, however, any indebtedness by decedent to his children seems equally unrealistic. It is not clear whether petitioner's contention that an amount of some $5,300 (or $7,500) constituted a claim *110 of the remaindermen against decedent is in the alternative only, but in any event we regard it as inconsistent with the accounting of August 26, 1946, and sustain respondent's action in disallowing it as a deductible claim against petitioner. The most that could be said is that the facts show assets of the remaindermen coming into decedent's hands subsequent to the accounting of approximately $21,000 as against which they received some $34,000 at his death. Nor is there adequate proof that even this sum would not have to be augmented by claims of the estate paid by decedent in the interval. Certainly there is no evidence of any court proceeding in which the remaindermen succeeded in surcharging decedent for any actions undertaken subsequent to his accounting. In this respect the deficiency was correct. Decision will be entered under Rule 50. Footnotes
1. Dart's Louisiana Civil Code, Second Edition, Volume 1: "Art. 533. Usufruct defined. - Usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce provided it be without altering the substance of the thing."↩
2. "(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary;"↩
3. Dart's Louisiana Civil Code, Second Edition, Volume 1: "Art. 624. Renunciation by usufructuary - Annulment by creditors. - The creditors of the usufructuary can cause to be annulled any renunciation which he may have made of his right to their prejudice, whether it be accompanied with fraud or not, and they are permitted to exercise all the rights of their debtor in this respect. "In all cases the renunciation of the usufructuary can not be inferred from circumstances; it must be express."↩
4. Dart's Louisiana Civil Code, Second Edition, Volume 1: "Art. 946 - Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decides whether he accepts or rejects it. "If the heir accept, he is considered as having succeeded to the deceased from the moment of his death; if he rejects it, he is considered as never having received it."↩
5. Dart's Louisiana Civil Code, Second Edition, Volume 1: "Art. 1626. - Every legacy under a particular title gives to the legatee, from the day of the testator's death, a right to the thing bequeathed, which right may be transmitted to his heirs or assigns; and this takes place as well in testamentary dispositions, universal or under a universal title, as in those made under a particular title. "Nevertheless, the particular legatee can take possession of the thing bequeathed, or claim the proceeds or interest thereof, only from the day the demand of delivery was former, according to the order hereinabove established, or from the day on which that delivery was voluntarily granted to him." ↩
6. Dart's Louisiana Civil Code, Second Edition, Volume 1: "Art. 1627. Legatee in possession - Demand unnecessary - Surrender for payment of debts. - The legatee is not bound to demand the delivery of the legacy, if the thing bequeathed to him is in his possession at the time of the opening of the succession, but he is bound to give it up for the purpose of contributing to the payment of debts, in case it be liable for any." ↩
7. Dart's Louisiana Civil Code, Second Edition, Volume 1: "Art. 1628. Executor also legatee - Demand unnecessary. - Neither is the testamentary executor, who has the seizin of the effects of the succession, and who is at the same time a legatee, bound to demand the delivery of his legacy; he can retain it in his possession subject to the same restitution."↩