Estate of Hunt Henderson, Allard D'Heur, Executor, and Jeanne Crawford Henderson, Executrix v. Commissioner.
Estate of Henderson v. Commissioner
Docket No. 111403.
United States Tax Court
1943 Tax Ct. Memo LEXIS 31; 2 T.C.M. (CCH) 1092; T.C.M. (RIA) 43508; December 14, 1943
*31 C. J. Batter, Esq., 902 American Security Bldg., Washington, D.C., and John L. Toler, Esq., for the petitioners. James L. Backstrom, Esq., and Homer K. Fisher, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax in the amount of $27,019.59 determined against the Estate of Hunt Henderson, deceased, for the period from June 22 to December 31, 1939, inclusive. Three questions are raised: (1) Whether any part of the income received from the community property of decedent and his wife during the taxable period after decedent's death is properly taxable to his widow, Jeanne Crawford, by reason of the law of property of the marital community in Louisiana, where the decedent and his wife were domiciled? (2) Whether any of the income of the decedent's estate was paid or credited by the estate during the same period to his widow? And (3) whether certain dividends payable on July 1, 1939 on stocks which were the separate property of the decedent and other dividends which were received before December 28, 1939 by the custodian of the decedent's property were income to the decedent's estate? The facts were stipulated and *32 may be summarized as follows: Findings of Fact Hunt Henderson, petitioners' decedent, died on June 21, 1939, leaving a widow, Jeanne Crawford Henderson, who was married to him about February 8, 1904. Both spouses were lifelong residents of Louisiana. A Federal income tax return was filed on behalf of the decedent for the year 1939 covering that part of the calendar year preceding his death on June 21, 1939; in which was reported one-half of the community income and deductions to the date of death as determined by the taxpayer. A Federal income tax return was filed by the decedent's executors for the period from June 22, 1939, to December 31, 1939, in which was reported one-half of the income of the previously existing marital community, with deductions for the period; and one-half of the income from the separate property of decedent, all as determined by the petitioner. A Federal income tax return was filed by Jeanne Crawford Henderson for the entire year 1939, in which was reported one-half of the community income and deductions for the period January 1, to June 21, 1939, determined in accordance with the decedent's return for the same period, and the remaining one-half income *33 and deductions omitted from the executors' return referred to above. The returns of both spouses and of the estate were filed upon the cash receipts and disbursements basis. The Commissioner in his deficiency notice added to the income of the petitioner the following items now in controversy which had been omitted from the return filed by decedent's estate but were included in the return filed by decedent's widow: Dividends
$14,344.59
Partnership Income
28,292.46
Gain on sale of securities
1,532.25
Interest
172.15
Interest on tax free cove-
nant bonds
250.00
Miscellaneous items
12.11
A total of
$44,603.56
and allowed as a further deduction
interest paid of
525.63
A net amount of
$44,077.93 and added the following additional items: Dividends
$12,157.01
Increase in gain on sale
of securities
821.80
Amounting to
12,978.81
A total addition to net income of
$57,056.74
1. Dividends (a) The total dividend income in controversy amounts to $41,194.42 and is composed of: Amount omitted from decedent's
return and included in the re-
turn filed by the widow
$14,344.59
Amount reported by decedent's es-
tate
14,344.59
Amount added by deficiency notice
12,157.01
Adjustments agreed to by counsel
for both parties
348.23
A total of
$41,194.42
*34 Of the total amount of $41,194.42 the sum of $34,683.12 is stipulated as being income for the period June 21 to December 31, 1939; but how much is income to the estate is in controversy. Of the total amount of $41,194.42 the sum of $2,132.25 was included as an asset in Schedule C of the estate tax return (Form 706) of decedent, and an estate tax paid thereon. These dividends of $2,132.25 were the separate property of Hunt Henderson and had been declared payable on July 1, 1939 to stockholders of record on June 15, 1939, the checks payable therefor being received after July 1, 1939. (b) Of the total amount of $41,194.42 the sum of $4,379.05 was received by decedent's estate under the following circumstances: Certain corporations mailed on December 12, 15, 18, 21, 22 and 26, 1939 dividend checks due on stocks owned and registered in the name of decedent to the National Bank of Commerce, at New Orleans, Louisiana, custodian of the securities of Henderson's succession, and the checks were received by the bank before December 28, 1939, and were credited on the day received to an account entitled "Hunt Henderson, Agent." The bank on January 10, 1940 transferred the receipts to the checking *35 account of the Succession of Hunt Henderson. In the past similar transfers had been made from time to time. Of the income from dividends set forth above $23,611.20 was received after November 14, 1939; and excluding the amount of $2,132.25, which was included in the estate tax return of decedent, $14,029.10 was from community property, $5,934.40 of this amount being paid after November 14, 1939; and $25,033.09 was from the separate property of the decedent, $17,676.80 of this sum being paid after the same day. 2. Partnership Income. Decedent was a member at the time of his death of the partnership of "Wm. Henderson", the partnership agreement between Henderson and the two Gambels, December 31, 1934, which was put in evidence, providing that Henderson have a two-thirds interest in the business of sugar refining and that the firm continue for one year after the death of any partner. It maintained its books on an accrual basis and on the calendar year. The income from the partnership of "Wm. Henderson" included in the net income of the petitioner by the Commissioner of Internal Revenue in the deficiency notice, is $56,584.92 for the period from June 21, 1939 to December 31, 1939. *36 The community interest in the capital of the partnership of "Wm. Henderson" was 241/450 of the combined community and separate property interests therein; the rest being the separate interest of the decedent. During the period from June 21, 1939 to December 31, 1939 the decedent's widow received the following sums of money: From the partnership of Wm. Henderson: June 30, 1939
$ 2,000.00
July 24, 1939
2,000.00
July 28, 1939
1,300.00
July 28, 1939
700.00
August 23, 1939
2,500.00
September 7, 1939
3,000.00
October 5, 1939
$ 2,000.00
October 24, 1939
700.00
November 13, 1939
2,000.00
November 30, 1939
415.06
A total of
$16,615.06
The above sum totaling $16,615.06 was charged on the books of the partnership of Wm. Henderson to an account styled "Mrs. Hunt Henderson" at p. 307 of its ledger. As of December 31, 1939 a transfer was made to the credit of the account of "Mrs. Hunt Henderson" from the account of the "Succession of Hunt Henderson" on the books of the partnership of Wm. Henderson. The partnership's journal entry, recording the transfer is as follows: (The ledger entries being omitted). December 31, 1939
Profit & Loss
$ 2,000.00
To (Auditors Fee) Accts. Payable
2,000.00
Cost of Audit fee Jas. A. McKenna period June 22/39 to
Dec. 31/39 -
Succession Hunt Henderson
16,615.06
To Mrs. Hunt Henderson
16,615.06
Transfer of amount standing to debit of Mrs. Hunt Hender-
son to Succession of Hunt Henderson Account (See Letter
Denegre, Leovy & Chaffe dated Mch. 27, 1940)
Profit & Loss
93,141.54
To Partners Accounts: Division of ascertained profits as of December 31, 1939 cover-
ing period June 22/39 to Dec. 31, 1939 -
Hunt Henderson, Succession 60%
55,884.92
Frederick A. Gambel 20%
18,628.31
Christian J. Gambel 20%
18,628.31
Succession Hunt Henderson
55,884.92
To Succession Hunt Henderson Income
55,884.92
Transfer from former to latter account
*37 The letter referred to in the entry is as follows: NEW ORLEANS March 27, 1940. Wm. Henderson 749 S. Peters Street New Orleans, Louisiana. Gentlemen: This will confirm the writer's conversation of a little over a month ago to the effect that it would be perfectly proper to transfer Sixteen Thousand, Six hundred fifteen and 06/100 ($16,615.06) Dollars from a credit to Mr. Hunt Henderson on the books of Wm. Henderson to the credit of Mrs. Hunt Henderson. Yours truly, Denegre, Leovy & Chaffee At the same time, on December 31, 1939, the account of the "Succession of Hunt Henderson" was credited with 60 percent of the earnings for the period from June 22, 1939 to December 31, 1939, in the amount of $55,884.92. This account (Succession of Hunt Henderson) had been opened by a credit dated June 21, 1939 (the date of decedent's death), in the amount of $28,085.23, and a corresponding charge bearing the same date closed out the personal account of Hunt Henderson on the partnership books. The ledger account of the "Succession of Hunt Henderson" on the partnership's books, recording the journal entry already set out, was put in evidence and is as follows: 1939
Bal. Income Tax 1938
1939
Sept. 15
To Cash, Col. Int. Rev.
$ 600.00
June 31 By H. H.
$28,085.23
593.43 ADDITIONAL ASS'MT 1937
Dec. 31 P. & L.
55,884.92
Sept. 15
53.41 to Interest
646.84
Nat. Bank of Com.
Oct. 2
To interest
208.33
Dept. of Revenue. State of La.
Oct. 26
To Final Income Tax 1938
15.00
Nov. 8
Cash. suc. H. H.
10,000.00
Dec. 31
Mrs. Hunt Henderson
16,615.06
Dec. 31
Suc. Hunt Henderson Income a/c
55,884.92
$83,970.15
$83,970.15
*38 The transfer from the account of "Succession of Hunt Henderson" to the account styled "Succession of Hunt Henderson Income Account" on the partnership's books is incorporated by reference. All these entries were made in accordance with the journal entry on the partnership's books, which is quoted above. 3. Other payments by the estate to the widow. On December 28, 1939 the decedent's widow received from the petitioner, decedent's estate, the sum of $2,000 by check drawn on the bank account of the estate; and before December 31, 1939 she received from the estate $68.34 more. No specific order of court was obtained in 1939 in the succession of Hunt Henderson authorizing the disbursement of any funds to decedent's widow. The will of the decedent which was probated in the Civil District Court for the Parish of Orleans, is as follows: This is my last will and testament I hereby revoke all previous wills and testaments and codicils. I leave to Tulane University of La. for the benefit of the Chair of Medicine, all the paintings drawings prints and books of J. A. McN. Whistler and literature relating to him. I leave Ellen H. Henderson two drawings by Rodin. I leave my home in *39 Biloxi, and the contents thereof and the contents of my home in New Orleans to my wife. I confirm to my son and my wife respectively the ownership and the usufruct, respectively of all the balance of my share of the community property to which each would have been entitled by law had I died intestate. - I leave the balance of my separate property to my son subject to the usufruct of my wife for her life which usufruct I leave to my wife. I appoint my wife my executrix with seizin and without bond. I appoint Denegre Leovy & Chaffee attorneys. Written dated and signed by me at New Orleans, La., November 23, 1934. (Signed) Hunt Henderson CODICIL New Orleans, La. October 11th, 1935. I add the following codicil: I leave to my wife in addition to the usufruct described in the above will Fifty thousand Dollars. (Signed) Hunt Henderson CODICIL New Orleans, La. January 4th 1936. This is a codicil to my last will. I hereby appoint Allard d'Heur my wife's nephew my executor to act with my wife or alone if he should survive her. (Signed) Hunt Henderson Copies of a petition to the Court and an order of the Court relating to the distribution of the interest in the partnership of "Wm. *40 Henderson" were put in evidence and are incorporated here by reference. The petition prayed the continuance of the Wm. Henderson partnership, for one year in order not to make a sacrifice of its assets and in accordance with the terms of the partnership agreement; and also a partial delivery of the legacy to the heirs, subject to the usufruct of the widow. The Court decreed these things prayed under date of June 19, 1940. On June 21, 1939, the community property and the husband's separate property were: Husband's
Community
Separate
Total
Real Estate
$ 39,000.00
$ 2,142.00
$ 41,142.00
Stocks and Bonds
592,179.00
929,535.64
1,521,714.14
Notes and Cash
36,038.40
19,467.48
55,505.88
Partnership Wm. Henderson
279,085.22
209,000.00
478,085.22
Miscellaneous
45,425.74
45,425.74
Total
$991,728.36
$1,160,145.12
$2,141,932.98
Debts
46,421.54
56,508.71
102,930.25
Net
$945,306.82
$1,103,636.41
$2,039,002.73 The stocks and bonds mentioned above were readily marketable. The estate tax return of Hunt Henderson disclosed the following additional debts owed by his succession: Expenses of last illness and funeral
$ 460.59
Executor's Commissions
26,611.64
Attorneys' fees
53,273.27
Miscellaneous
12,399.46
Total Debts of Community and Suc-
cession appearing in the Estate Tax
return
$195,750.21
*41 Of the total debts, except the last illness and funeral expenses, 549/1000 constituted separate property debts and the balance community debts. The estate tax return of the succession of Hunt Henderson was filed on September 20, 1940 disclosing an estate tax of $177,893.26 which was paid when the return was filed. On November 14, 1939 the sum of $100,097.22 was paid in full satisfaction of certain debts included in the total of $102,930.25 appearing above. The succession kept an account in the National Bank of Commerce in New Orleans, La., entitled "Succession of Hunt Henderson", and Allard d'Heur, and Jeanne Crawford Henderson, the executor and executrix, respectively, were authorized to deposit money in this account and to draw money therefrom by checks signed by either. A list of docket entries in the succession of Hunt Henderson, deceased No. 231429 in the Civil District Court for the Parish of Orleans, Louisiana, put in evidence, is incorporated here by reference. The succession has not been closed in the Civil District Court for the Parish of Orleans, Louisiana. Opinion KERN, Judge: 1. Community property interest. This case involves three questions, the first of which *42 is whether any part of the income received for that part of the calendar year 1939, falling after Hunt Henderson's death on June 21, which respondent has determined to be taxable to his succession, was property taxable to his widow, Jeanne, by reason of her rights in the marital community. Respondent's contention is that there were substantial debts, community and separate, together with succession debts and Federal estate taxes, and that the administration of the succession continued through the calendar year 1939; and that since the entire community estate and not merely the one-half interest of the decedent spouse was so administered, the entire income of the community property is taxable to the executors. He relies upon Barbour v. Commissioner, 89 Fed. (2d) 474 (5th Cir.); Kuldell v. Commissioner, 69 Fed. (2d) 739 (5th Cir.); both Texas cases; upon Commissioner v. Larson, 131 Fed. (2d) 85 (9th Cir.); affirming 44 B.T.A. 1094, a Washington case; and especially upon Bellagie I. Newman, 37 B.T.A. 72; a Louisiana case; with certain *43 supporting authorities drawn from Louisiana law. Petitioner argues that under Louisiana law the wife has a present vested interest, and not a mere expectancy, in the marital community property, citing Bender v. Pfaff, 282 U.S.127; that under article 916, Revised Civil Code of Louisiana, the surviving wife where, as here, there is also surviving issue, has a usufruct for life in the community property, and consequently that her right to the income from such property is absolute and the income should be taxable to her and not to the executors. The Supreme Court held in the Pfaff case, supra, that Louisiana decisions recognize "the wife's ownership of one-half of all the community income" and that this half-interest "is not a mere expectancy during the marriage" (at p. 582); and consequently that the wife during coverture was entitled to file a separate income tax return for her one-half interest. Article 916 of the Revised Civil Code of Louisiana provides as follows: In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community *44 property, the survivor shall hold a usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage. In the instant case decedent by his will disposed of the substance of his estate, after leaving his Biloxi and New Orleans houses to his wife, as follows: I confirm to my son and my wife respectively the ownership and the usufruct, respectively of all the balance of my share of the community property to which each would have been entitled by law had I died intestate. - I leave the balance of my separate property to my son subject to the usufruct of my wife for her life which usufruct I leave to my wife. The petitioner contends that the disposition by will insofar as the usufruct is concerned was ineffectual to convey (except as to the condition of defeasibility on re-marriage) what the law already gave, relying on Succession of Lynch, 145 So. 42; where the Supreme Court of Louisiana held such an interest given to the wife by will, as here, not subject to the inheritance tax; and upon *45 Succession of Marsal, 42 So. 778; where the same Court held that the widow did not take the usufruct by inheritance merely because it had not been given by will, since it was "a right conferred by the law, which enters into and forms part of the marriage contract." Succession of Teller, 21 So. 265; and Dixon v. Dixon, 4 La. 188; 23 Am. Dec. 478; also cited, indicate that the right of usufruct does not originate by dissolution of marriage. We may assume, therefore, that the right is like dower at common law, created by marriage and therefore having an existence antecedent to the husband's death. The language of the decedent's will which "confirms" the interest in the wife indicates that this was likewise the testator's understanding. To restate the petitioner's argument for purposes of clarity, the contention is that the widow's one-half of the community property is an interest vested in her by law at the time of and by reason of the marriage, and that she also has a life estate through operation of law, by her marriage and not by descent, in the decedent's one-half *46 of the same community estate. It would follow, therefore, according to the contention of petitioner, that none of the income, whether that flowing from the wife's absolute ownership or from her life interest, would be taxable to the executors. It would be taxable only to the widow. Assuming without deciding that the basic premises in petitioner's argument are true, and that under the law of Louisiana the interest of the wife in her one-half of the community property vests in her at the time of the marriage and that her interest as usufructuary of her deceased husband's half of the community property goes to her by law and not by descent, nevertheless we are unable to agree with petitioner's conclusion, because of the fact that there were unpaid debts of the succession during the period here involved and the succession was being properly and actively administered. Under these circumstances the entire property of the community passes under the executors of the deceased husband's succession and the rights of the wife under the community, being residuary in character, are contingent, at least with regard to ascertainment and liquidation, until the settlement of the succession. Therefore *47 during the active administration of such a succession, i.e., the succession of a deceased husband who is the member of a community still owing debts, the entire property of the community passes under the control of the executors, and, "quoad 'its administration'," it is to be regarded as their property. Succession of Bertrand, 123 La. 784, 49 So. 524; Kremer v. Kremer, 121 La. 484, 46 So. 600; Succession of McLean, 12 La. Ann. 222; Poindexter v. Louisiana & A. Ry. Co., 170 La. 521, 128 So. 297. It follows that the income of the community property thus held is income of the succession. This result is consonant with our decision in Bellagie I. Newman, supra, wherein the situation was practically on all fours with that here. It also arose in Louisiana. The position of the litigants was reversed, however, for there the respondent was seeking to tax the income of the whole community property to the surviving wife as an individual taxpayer. She was also the executrix of her deceased husband's *48 will. The petitioner wife returned half the estate as taxable but later sought to avoid any tax. Nothing was paid or credited during the taxable period to petitioner as a legatee of decedent or as a usufructuary under the will. The deceased husband, as here, had bequeathed to his wife "full ownership" of the entire disposable portion of his estate, less a bequest to a son, and an unlimited usufruct in the entire estate, including the son's bequest, for life. We held that the decedent's one-half interest passed to his wife only in her capacity as executrix; and that the other half, the wife's interest. "except in cases where there are community debts," did not pass under the control of the executor. There is no question in this case but that there were outstanding and unpaid debts of the community during the period here in question. The petitioner points out that the relative amount of these debts with reference to the value of the community property or the separate property of the decedent was extremely small. We consider this fact to be irrelevant. There were community debts outstanding, the succession of the deceased husband was being actively administered and no final liquidation *49 had taken place. These facts suffice to bring this case within the rule recognized in other community property states, which is to the effect that "the income from community property during the administration and liquidation thereof" should be reported in the income tax return of the estate. See Commissioner v. Larson, supra. 2. The next question is whether Hunt Henderson's succession paid or credited any of its income in 1939 to his widow. Such payments are, of course, deductible from the executors' income under section 162 (c), [1]Revenue Act of 1938. Petitioners in their amended petition claim that $18,683.40 was so paid or credited. Of this sum $16,615.06 is claimed as the total sums paid by the partnership of Wm. Henderson to Jeanne Crawford Henderson. The balance of $2,068.34, the source of which does not appear, was paid within the taxable year. *50 We are met at the outset by the principle that a credit in the nature of a deduction, or a deduction, being a matter of grace, must be clearly established to be allowed. Helvering v. Ohio Leather Co., 317 U.S. 102; New Colonial Ice Co. v. Helvering, 292 U.S. 435. The statute, it may be noted, limits the deduction to the "income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary." See Guitar Trust Estate, 34 B.T.A. 857, 870. There is a fatal objection to the petitioners' claim in respect of the $16,615.06 credited to the decedent's widow as of 1939; this sum clearly was not income of the partnership and therefore of the estate "for its taxable year." The several sums constituting the total in question were paid to Jeanne Crawford Henderson, by the partnership of Wm. Henderson from time to time from June 30 to November 30, 1939. Of the partners, the two Gambels, who owned 40 percent, had no connection with decedent's estate. The sums paid Jeanne Henderson were carried on the partnership books during *51 the taxable year on an account styled "Mrs. Hunt Henderson." It was not until May 27, 1940, as appears from a letter of the estate's counsel to the partnership, that partnership was authorized to transfer the sum in question "from a credit to Mr. Hunt Henderson on the books of Wm. Henderson to the credit of Mrs. Hunt Henderson". On this late date, therefore, entries were made on the partnership books as of December 31, 1939, crediting the account of "Mrs. Henderson" with this sum total and also charging the partnership's account "Successsion of Hunt Henderson" with the same amount. What was done appears clearly from the partnership's journal entry which we have set out in full in our findings. This, however, is not the most significant fact which emerges from an examination of this entry. Under a general entry of Profit and Loss, there is a charge to the Partners' Accounts of a "Division of ascertained profits as of December 31, 1939 covering period June 22/39 to Dec. 31, 1939," 20 percent to each of the two Gambels and to "Hunt Henderson, Succession 60%, $55,884.92." This sum was credited below to "Succession Hunt Henderson" and in turn "To Succession Hunt Henderson Income a/c *52 Transfer from former to latter account." The sum here in question, $16,615.06, however, is treated quite differently. There is the following entry: Succession Hunt Henderson. To Mrs. Hunt Henderson Transfer of amount standing to debit of Mrs. Hunt Henderson to Succession of Hunt Henderson Account (See Letter Denegre, Leovy & Chaffee dated Mch. 27, 1940) - $16,615.06 At the time the payments were made by the partnership to Mrs. Henderson, totaling this amount, the account of "Succession of Hunt Henderson" had been credited with no part of the partnership income after June 21, 1939, but had as its only credit the sum of $28,085.23, transferred to this account from the personal account of Hunt Henderson which was thereby closed out at his death. We think that this conclusively shows that the sums paid Jeanne Henderson were not from the income of the partnership earned after June 21, 1939, and therefore not from the income of the succession, and this being so, consideration of the other objections may be reduced to mere mention of them, since the statute specifically requires that any distribution, to be deductible, must be made from income received during the year. To summarize the *53 difficulties which lie in the petitioners' path, we need merely mention that of showing that the year when the credit was made was 1939, in view of the letter of March 27, 1940. There is the further difficulty that the petitioners have not shown that the payments were made by the estate itself which now claims the deduction. Again, no court orders were obtained in the year 1939. All the facts point to a very informal understanding between the widow and the partnership, with the executors making no distributions in their own name. For all these reasons, as well as the major reason that the sums paid were not from income, we must deny the deduction. As to the sum of $2,068.34, which was also paid Jeanne Henderson in 1939, it may or may not have been paid from the estate's income. We do not know. The stipulation stops with the bare fact of payment in the taxable year and no other evidence appears. This being so, we must deny the deduction for failure of proof of the source of payment, but the same secondary objections would apply to this distribution also. 3. We come now to the dividend distributions which respondent seeks to include in income for 1939. They were of two kinds, and *54 the only question is whether they were received by the estate in the taxable period. The first lot of dividends, in the amount of $2,132.25, were according to the stipulation, the separate property of the decedent and included as an asset of his estate. They were declared on July 1, 1939 to stockholders of record on June 15, 1939, and checks were received after July 1. The decedent died on June 21. The respondent concedes that this distribution did not constitute income received in 1939, on the authority of Frank H. Clark, 12 B.T.A. 425. The second lot, of $4,379.05, was paid in December 1939 and the checks all received before December 28. The stocks were in the name of decedent and the checks were paid to the National Bank of Commerce in New Orleans, which was custodian of the securities of the decedent's succession and which at once credited them to an account., "Hunt Henderson, Agent," and on January 10, 1940, transferred the credits to the checking account of "Succession of Hunt Henderson." This was according to prior practice. Respondent would include these dividends in petitioners' 1939 income as received in that year. We agree. The question is *55 a simple one of agency, and it appears from the short stipulation on this point that the bank which had been the agent of Henderson while living acted on his death as the agent of his executors with their knowledge and consent. It is obvious that the bank could at that time have acted only as agent for the executors. We regard as of no moment the fact that the dividend checks were not at once credited to the succession but were at first credited to an old account of Henderson. The only persons who could make a lawful demand on the bank were the executors and there is no ground for assuming with petitioners that this right could be suspended by a mere bookkeeping entry. It must be supposed also that the executors would have knowledge, as well as will, to deal with the dividends on their receipt by the bank, since such credits and transfers are stipulated to have been the established practice in the past. The petitioners retort that agency has not been proved, but the facts stipulated are consistent with the existence of the agency, and if the bank had some independent right or interest in the dividends and was not a mere agent, the petitioners must show that it was so, because of the *56 presumption raised by the determination of respondent, and they have not done so. The petitioners had constructive possession of the dividends in 1939. We hold on this point for the respondent. Judgment will be entered under Rule 50. Footnotes
1. Sec. 162. Net Income. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * * * *
(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.↩