OVERTON, J.
 

 This is a petitory action brought to recover an undivided one-half interest in two lots, coupled with an action for partition. Plaintiffs claim this one-half interest by inheritance from their mother, Alice Poindexter, who died in the early part of 1897, leaving a will in which she bequeathed it to them, and in which she appointed her husband, Robert B. Poindexter, testamentary executor. Robert B. Poindexter had the will probated, and qualified as testamentary executor, but apparently did nothing more in the succession.
 

 Robert B. Poindexter died in January, 1898. He also left a will, bequeathing his property to plaintiffs, and appointing T. B. Chase executor. The will was probated, and Chase qualified as executor. Later, he also qualified as executor of the will left by Mrs. Poindexter. Both estates were administered practically simultaneously, and both proved to be insolvent, the estate of Mrs. Poindexter barely paying the privileged claims against it,
 
 *524
 
 while the estate of her husband failed to pay in full all of the privileged claims due by it.
 

 Mr. and Mrs. Poindexter were married at some time, not definitely fixed, prior to 1891. The two lots, in which plaintiffs claim an undivided half interest, through their mother, were acquired by Robert Poindexter on February 16, 1892, and therefore belonged to the community of acquets and gains, existing between Poindexter and his wife. Mrs. Poindexter’s interest in the lots was not inventoried in her ■ succession. In the succession of her husband, the notary evidently intended, at first, to inventory the lots as community property, for he wrote words indicating such an intention, but drew a pen through them, and inventoried the lots as the property of the succession of Robert Poindexter.
 

 In the latter part of 1898 the executor of Robert Poindexter’s will obtained an order to sell all of the property of his succession to pay the debts thereof. In this application no reference was made to the lots as belonging to the community, and no reference was made to any of the debts as community debts, though, as appears from the final account, later filed, there were community debts at the time.
 

 The two lots were sold at public auction, under the foregoing order of court, on November 7,-1898, and purchased by Foster Carter. Carter sold the lots by warranty deed on March 30, 1909, to Drake and Buchanan, and they sold them to the Louisiana & Arkansas Railway Company, by warranty deed, on April 27, 1909.
 

 In the same year in which the railway company purchased the property it took possession of it, and, at the time this suit was instituted had a depot on it, costing approximately $50,000.
 

 ' Plaintiffs do not contend that the probate sale of the two lots was not valid as to their father’s undivided half interest in the lots, but their contention is that the sale failed to divest them of their mother’s interest in the property. This contention rests upon the theory that, as in neither the application for the order of sale to pay debts, made in their father’s succession, nor in the order itself, are the debts referred to as being community debts, nor are 'the lots designated as being community property, and, as the sale was ordered for the purpose of selling, in Robert Poindexter’s succession, the two lots, as if they were his separate property, to pay the debts of his succession, the executor exceeded the authority, granted him by the order of court, ’in selling the half interest in the property, which they acquired by their mother’s will.
 

 The defenses are that the property was, in fact, sold to pay community debts, although neither the application for the sale nor the order of sale designates the debts as community debts, and, in the alternative, that whatever right of action plaintiffs may have had was a right of action for the value of the property, as defendant the Louisiana & Arkansas Railway Company was a common carrier vested with the power of expropriation, and was using the property for the purposes of a common carrier. In addition defendants also pleaded the prescription of two, five, and ten years.
 

 Where the community is unliquidated and owes debts, the property belonging to it may be sold, to liquidate the community, in the succession of the husband. Thus, in Oriol v. Herndon, 38 La. Ann. 759, it appeared that the husband and wife were living under the
 
 regime
 
 of the
 
 community; that the
 
 wife died in 1872,; that 'the husband died about one
 
 *526
 
 year later; that the wife’s succession was never opened; that the husband’s succession was opened, and the real estate, which stood in his name, but which was community property, was inventoried in his succession, and constituted the sole asset appearing on the inventory; that the administrator filed a tableau of debts, amongst which appeared taxes and debts arising during the existence of the community, and which were due by it, and that, upon the representation that he had no funds with which to pay the debts, obtained an order to sell the property. The property was sold, and the heirs of the deceased husband and wife, through their tutor, brought suit to recover the property on the ground that the sale was null, because the wife’s interest in community property cannot be sold under proceedings had in the succession of the husband, but the court, in passing upon this issue, held that: “Where the community is unliquidated and owes debts, the contrary has been held too often to require more than a citation of authorities. Durham v. Williams, 32 [La.] Ann. 162 ; Succession Cason, 32 La. Ann. 792 ; Succession Boyer, 36 [La.] Ann. 515 ; Killelea v. Barrett, 37 [La.] Ann. 865 ; Succession Bright, 38 [La.] Ann. 141 ; Succession McLean, 12 [La.] Ann. 222.” To the same effect, or bearing thereon, see Heirs of Brown v. Jacobs, 24 La. Ann. 526, 529, 530 ; Kremer v. Kremer, 121 La. 484, 497, 46 So. 600.
 

 In such a case as the present, it is a matter of no serious importance that the debts were not designated as community debts in the petition asking for the sale, or in the order granting the application. Neither the application, designating the debts as debts due by the succession of the husband, nor the order of sale, referring to them merely as debts, excludes the idea that they were community debts. In fact, the .expressions used are sufficient to include- the community debts as well as the separate debts of the husband, for the husband’s estate is liable for1 -the community debts as well as for his separate debts. Both are the debts of the husband’s succession.
 

 Where there were community debts to be paid, as was the case here, there should be no serious question as to the sufficiency of the order in this instance, even though it so happened that only one of those debts — a very small one — was actually paid, because of the insufficiency of funds, for it is the right to sell at the time the order of sale is granted that controls and not the eventual payment out of the proceeds of the sale.
 

 The fact that the lots were inven- ■ toried as if they were the separate property of the-husband, when they, in fact, belonged to the community, coupled with the further fact that the order of sale directed that all of the property of the succession of the husband be sold to pay debts, is likewise a matter of no grave importance. As the property was com-, munity property, and as the community owed debts, the property could be sold legally in the husband’s succession. In fact, until the community .was liquidated the husband’s succession- was entitled to the control of the property in order to liquidate the community. Kremer v. Kremer, 121 La. 484, 497, 46 So. 600. This control, coupled with the fact that the property could be legally sold in. the succession of the husband, made it a matter of no great importance that the property was sold as if it belonged to the succession of the husband. This manner of proceeding could not affect the validity of the sale.
 

 Our conclusion is that the adjudicatee at the probate sale acquired a valid title, not
 
 *528
 
 only to the husband’s interest in the lots but also to the wife’s.
 

 The trial court rendered judgment rejecting plaintiffs’ demands for recognition of ' their ownership of an undivided one-half interest in the two lots, and for a partition thereof, but reserved plaintiff^ right, by proper proceeding, to obtain adequate compensation for the taking of their property by the railway company, and reserved to that company the company’s rights against its warrantors. This judgment was affirmed by the Court of Appeal. 124 So. 535. These judgments should be set aside, and judgment rendered in accordance with the views herein expressed.
 

 For the reasons assigned, the judgment of the district court and the judgment of the Court of Appeal, under review, are set aside, and judgment is. now rendered rejecting plaintiffs’ demands at their cost.
 

 O’NIELL, C. J„ is of the opinion that the judgment of the district court and Court of Appeal is correct.