Aimee D. BAGUR, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Barbara M. HANSEN,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 76–4466, 77–2974.

United States Court of Appeals,
Fifth Circuit.

Sept. 26, 1979.

M. Hepburn Many, New Orleans, La., for petitioner-appellant in No. 76–4466.

Meade Whitaker, Chief Counsel, I. R. S., Acting Asst. Atty. Gen., Aaron Rosenfeld, Gary R. Allen, Ernest J. Brown, Attys., Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee in No. 76–4466.

Barbara M. Hansen, pro se.

Victoria Welcome, Atty., Women's Law Centers, Inc., Dallas, Tex., for amicus curiae for Women's Law Centers, Inc.

M. Carr Ferguson, Acting Asst. Atty. Gen., Richard Farber, Crombie J. D. Garrett, Gilbert E. Andrews, Chief, Appellate Sect., Richard Farber, Atty., Charles L. Saunders, Act. Chief Counsel, Tax Div., U. S. Dept. of Justice, Stuart Seigel, IRS, Washington, D. C., for respondent-appellee C. I. R.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

In the Louisiana community property system a wife has a present, vested, undivided one-half ownership of the property acquired during the marriage, including her husband's earnings.[1] The system is based on the concept of the family as a viable unit, the husband exercising his managerial control as "head and master"[2] in the best interests of the matrimonial partnership.

1. "Every marriage contracted in this State, superinduces of right partnership or community of acquets [acquisitions] or gains, if there be no stipulation to the contrary." La.Civ.Code art 2399. "This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; 'provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.' (As amended by Acts 1902, No. 68.)" La.Civ.Code art. 2402.

2. "The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife. ¶ He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor. ¶ Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons. ¶ But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud. (As amended by Acts 1926, No. 96.)" La.Civ.Code art. 2404.

The principle of equal ownership of the community served the Louisiana wife well—as long as the family was a viable unit and as long as the husband managed the community in good faith. It has been difficult, however, for Congress and the Internal Revenue Service to fit the civilian community property system into a tax structure based essentially on common law principles of property and special tax principles based on control not formal title.[3]

In these two cases before us, consolidated on appeal, the IRS asserts that an income tax is due by a wife on one-half of her husband's unreported earnings—although she may have been living separate and apart from her husband, had no control of his income, and no knowledge of what it was or where it went. The plaintiffs are impoverished victims of their husbands' profligacy. The IRS has stripped clean one of the wives. The other is about to be stripped clean. This horrendous result flows from Louisiana law, not from federal tax law.

The position of the IRS is a rational result of accepting the Louisiana doctrine of community property. But it produces an anomaly. In most areas of tax law, courts follow the Supreme Court's admonition, "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed". *Corliss v. Bowers*, 1930, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916, 917. "The power to dispose of income is the equivalent of ownership." *Helvering v. Horst*, 1940, 311 U.S. 112, 118, 61 S.Ct. 144, 147, 85 L.Ed. 75, 79. Here, unlike the government's argument in many tax cases, the IRS does not ask the Court to look through form to substance.

Even tax law must be "applied with a view of avoiding, as far as possible, unjust and oppressive consequences". *Farmers' Loan and Trust Co. v. Minnesota*, 1929, 280 U.S. 204, 212, 50 S.Ct. 98, 100, 74 L.Ed. 371. We must not, of course, permit a hard case to induce us to make bad law. We say, however, in view of a wife's half ownership of her husband's earnings, that for federal tax purposes a husband may have committed the *equivalent* of the theft of the wife's share, in the circumstances these cases present. I.R.C. § 165(c)(3).[4] The equiva-

---

3. In *Phillips v. Phillips*, 1926, 160 La. 813, 825, 107 So. 584, 588, the Louisiana Supreme Court declared, "The wife's half interest in the community property is not a mere expectancy . . . The title for half of the community property is vested in the wife the moment it is acquired . . . .". Shortly before *Phillips* was decided the United States Supreme Court had decided in *United States v. Robbins*, 1926, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, that wives residing in California could not report one-half of the community income on their return, because the wife's interest in the community was, under California law, a mere expectancy. The decision in *Phillips* paved the way for married couples in Louisiana to reduce their tax burden by filing separate returns.

After *Phillips* was decided, the Supreme Court gave its blessing to the Louisiana wife's filing a separate income tax return on her one-half of the community. *See* Note, *The Nature of the Wife's Interest During the Existence of the Community*, 25 La.L.Rev. 159 (1964); Note, *Federal Tax Liability of the Wife for Community Income Earned by the Husband*, 32 La.L. Rev. 471 (1972).

A parallel development occurred in the field of inheritance taxes. Section 402(b)(2) of the Revenue Act of 1942 provided that community property be taxed "to the extent of the interest therein held as community property by the decedent and surviving spouse". A literal construction of the Act would have resulted in including the entire community within the decedent's gross estate. In *Succession of Weiner*, La.Sup.Ct.1943, 203 La. 649, 14 So.2d 475, the Louisiana Supreme Court held, citing *Phillips*, that the wife's one-half ownership of the community during the existence of the marriage prevented the inclusion of her one-half interest in the gross estate of the decedent. This ruling, too, benefited Louisiana taxpayers.

Treasury officials sought to put community property states on the same tax footing as non-community property states. Citizens in the common states made the same demand or demanded that they be allowed the tax benefits that citizens of community property states received. A tax War-Between-the-States ensued with Congress the main battlefield. Finally, the Revenue Act of 1948 settled the war by allowing joint income tax returns to be filed by husband and wife and by allowing the marital deduction. See *United States v. Stapf*, 5 Cir. 1962, 309 F.2d 592, 598 (dissenting opinion).

4. Section 165(c)(3) provides:
 (a) General Rule—There shall be allowed as a deduction any loss sustained during the taxable year in question not compensated for by insurance or otherwise.

lence of theft rests on the husband's bad faith appropriation to his uses of the wife's share of his earnings, over which his wife had no control, of which she had no knowledge, and from which she had little or no benefit. (We are not suggesting that in similar circumstances a husband could be prosecuted by the state for theft.) The plaintiffs did not rely on this theory, but we concluded that the interests of justice required us to consider it, and after oral argument we requested the parties to file briefs on the question. Further consideration of the problem persuades us that the facts must be fully explored in the trial court. Accordingly, we remand the cases to the Tax Court for it to determine whether the taxpayers are entitled to a theft loss deduction for the taxable years in question and, if so, the amount of the deduction.

## I.

*Mrs. Bagur.* Aimee and Pierre Bagur were married in Louisiana. Before 1960, Mr. and Mrs. Bagur filed joint income tax returns. From 1960 through 1966, the taxable years in question, neither one filed any federal income tax returns.

According to Pierre Bagur's testimony before the Tax Court, he suffered extreme financial reverses in 1960. At that time, he sold his business and drifted into a new career as a real estate broker. He described his situation: it was "rather destitute economically. [I]t was a hand to mouth proposition . . . it got to the point where we were given notice to move at home about every three or four months." Mrs. Bagur knew there were financial problems but she did not know their nature or severity; Mr. Bagur never discussed his income or expenditures with his wife. Mrs. Bagur testified that there was no communication between them, even in 1960 and 1961 when they shared a house. After 1962 they rarely saw each other. She had no checking accounts or credit cards and did not own an automobile. All household bills were sent to her husband's office.

In 1962 the Bagurs' financial condition worsened. They received still another notice to vacate the house. Electricity, telephone, and gas were shut off. From 1962 until 1968, when Mrs. Bagur obtained a divorce, the taxpayer and her husband maintained separate domiciles in Louisiana. Mrs. Bagur lived in grinding poverty, often with the utilities cut off, sometimes with not enough to eat. Her three school-age children gave her a little financial assistance from time to time. Mrs. Bagur's health was poor; she was arthritic, anemic, and undernourished. Ground down but attempting to keep her head up, she worked sporadically in 1962, 1963, 1965, and 1966. Mrs. Bagur estimated that during the seven tax years in question her husband paid about $10,000 for food, rent, and other necessities.

Finally, the Bagurs were judicially separated in 1968. As a result of the settlement of the community, following her divorce, she received a piece of property estimated as worth between $2,000 and $3,000.

The Commissioner reconstructed Mr. Bagur's net profit during 1960 through 1966 and assessed tax deficiencies against Mrs. Bagur based on one-half of her husband's taxable income. The Commissioner also determined that Mrs. Bagur was liable for the taxes on wages she received during 1962, 1963, 1965, and 1966. Because Mrs. Bagur earned these wages while living separately from her husband, they were separate property under Louisiana law. La.Civ.Code Art. 2334. She was taxed, therefore, on the entire amount earned. The Commissioner also assessed penalties against Mrs. Bagur for failure to file income tax returns without reasonable cause, I.R.C. § 6651(a); for negligent failure to pay income tax for the years 1960 through 1962, I.R.C. § 6653(a); and for underpayment of estimated tax for 1962, 1963, and 1966, I.R.C. § 6654. The

(c) Limitations on Losses of Individuals—In the case of an individual, the deduction under subsection (a) shall be limited to—

(3) Losses—from theft.

total amount owing is $3,860.27. The Tax Court held Mrs. Bagur liable for all the taxes and penalties assessed against her.[5]

*Ms. Hansen.* Barbara and Donald Hansen, a design consultant, were married for twenty-eight years. They lived in several states, then removed to Lafayette, Louisiana, where they resided with their five children. They shared a residence during the taxable year in question, 1971; he was away a good part of the time. In that year Donald Hansen received commissions of $34,500. It was a windfall. What happened to the money is a mystery. The Internal Revenue Service was unable to collect the deficiency. At the hearing before the Tax Court Ms. Hansen represented herself. Counsel for the IRS informed the court that Mr. Hansen had been in dire straits. Ms. Hansen added that her husband suffered from severe depression. We were informed during oral argument that Mr. Hansen had committed suicide.

Mr. Hansen was in charge of the household bills, many of which apparently went unpaid. He doled out cash to his wife to buy food and gasoline. She made "everything the [three] girls wore". (Tr. 10). As the daughters and two sons grew older they contributed small amounts to their support. In Lafayette Ms. Hansen had no credit cards. She gave up her checking account when her checks were returned for lack of sufficient funds. She signed her last tax return in 1963 when Mr. Hansen was salaried in Florida and she had a small job. When from time to time she questioned her husband about income tax returns, he used to say to her, "Don't worry about it. It's all taken care of." (Tr. 8). Ms. Hansen estimated that she and the children received about $3,400 from her husband in the form of payments on their house, food, gas, and automobile upkeep.

For the children's sake, Ms. Hansen put up with her husband until 1972, when her youngest child was in high school. Ms. Hansen then instituted separation proceedings. She left the marriage with only a few household goods—no cash, no securities, no automobile. The mortgagee foreclosed the mortgage on the home. Ms. Hansen now works for the local telephone company.

The Commissioner determined that Ms. Hansen owed taxes on one-half of the income, $34,500, her husband received in 1971. The Commissioner determined that Mr. Hansen incurred business expenses of $5,000 and decreased Ms. Hansen's share of the community income by $2,500. The tax deficiency assessed against her amounted to $3,064. The Commissioner also assessed various penalties for Ms. Hansen's failure to file returns and pay taxes. Before the Tax Court, however, the Commissioner conceded that the penalties were not applicable. In the Tax Court hearing, Judge Sterrett showed signs of reluctance to hold against Ms. Hansen.[6] Nevertheless, in 1977 the Tax

---

5. The Tax Court determined the total liabilities for the years in question as follows:

| Year | Income Tax | Addition to the Tax | | |
| | | Section 6651(a) | Section 6653(a) | Section 6654 |
|---|---|---|---|---|
| 12/31/60 | $230.00 | $57.50 | $11.50 | – |
| 12/31/61 | 271.00 | 67.75 | 13.55 | – |
| 12/31/62 | 605.00 | 142.63 | 30.25 | $15.56 |
| 12/31/63 | 1,034.30 | None | None | 28.45 |
| 12/31/64 | 192.00 | None | None | – |
| 12/31/65 | 372.00 | None | None | – |
| 12/31/66 | 1,155.97 | None | None | 32.29 |

---

6. Judge Sterrett outlined the procedure involved in a tax case before his court, then said: "I will write up an opinion saying you're right or wrong . . . that is the end of it. I don't think the government would appeal. I would hope they wouldn't". (Tr. 15). Footnote 2 of his opinion reads: "Although we do not decide and the record does not indicate, it may be that petitioner can present sufficient evidence to establish, for a subsequent year, an embezzle-

Court sustained the Commissioner's determination that Ms. Hansen owed taxes on one-half of her husband's earnings in 1971. On March 6, 1978, the IRS notified Ms. Hansen that her wages were subject to a tax lien and would be seized to satisfy the deficiency.

## II.

The Internal Revenue Code does not deal specifically with community income. In 1930, however, the Supreme Court held that a wife's ownership of community income, determinable by state law, subjected her to federal tax liability within the meaning of the catchall provision, now Section 1 of the Internal Revenue Code of 1954, imposing federal income tax on the taxable income "of every individual". *Poe v. Seaborn*, 1930, 282 U.S. 101, 109, 51 S.Ct. 58, 75 L.Ed. 239, 243. Accordingly, the Court sustained the filing of separate federal income tax returns by a husband and wife in each community property state where a wife has a present one-half ownership interest, rather than a mere expectancy interest, in the community income. *See, e. g., Poe v. Seaborn; Goodell v. Koch,* 1930, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247; *Hopkins v. Bacon,* 1930, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; *Bender v. Pfaff,* 1930, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252. Needless to say, this was a great boon to community property states but one that was consistent with Louisiana doctrine. In the Court's view, of all the community property states, Louisiana provided the strongest case in favor of the wife's one-half ownership of the community income. *Bender v. Pfaff,* 282 U.S. at 128, 51 S.Ct. 62. The Supreme Court reaffirmed this determination as recently as 1971, in a case that is dispositive of the primary issue the taxpayers initially raised. *United States v. Mitchell,* 1971, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 involved a Louisiana husband and wife. Mr. Mitchell had failed to file federal tax returns from 1955 to 1959. The Court held that Mrs. Mitchell was personally liable for the federal income

tax on one-half of her husband's earnings that were realized during the existence of the community.

The taxpayers seek to avoid *Mitchell* by arguing that a recent Louisiana Supreme Court decision, *Creech v. Capitol Mack Inc.,* La.Sup.Ct.1973, 287 So.2d 497, overrules an earlier Louisiana case, *Phillips v. Phillips,* La.Sup.Ct.1926, 160 La. 813, 107 So. 584, with respect to the nature of a Louisiana wife's interest in community income during the marriage. In *Creech* the court characterized the wife's interest as an "imperfect ownership". Because *Bender* and *Mitchell* relied heavily on the Louisiana Supreme Court's characterization of that interest in *Phillips* as one of vested ownership, so the argument runs, the Supreme Court cases are no longer controlling law.

We disagree. Neither *Bender* nor *Mitchell* relied exclusively on *Phillips.* The Supreme Court found support in the provisions of the Louisiana Civil Code for the view that the wife has an ownership interest. Article 2399 of the Code expresses the principle that a marriage contracted in Louisiana "superinduces a partnership or community" of gains.[7] Moreover, the Code provides that a husband and wife may dispose of his or her one-half of the community by will and each is powerless to affect the other's half. La.Civ.Code Arts. 915, 916. At the dissolution of a marriage the effects that compose the community are divided into equal portions between the husband and the wife, or between the heirs, Article 2406, and at dissolution, both the husband and wife are equally liable, Article 2409, for their share of the debts contracted during the marriage.

In *Phillips,* the Louisiana Supreme Court reviewed these codal articles when it addressed the question whether a wife who obtains a separation from bed and board must accept the community within a thirty-day period or forfeit her share. The court concluded that there was no reason for a presumption that the wife has tacitly re-

ment or similar deductible loss of her community share."

7. See footnote 1.

nounced her half of the community if she does not formally accept it within thirty days since the wife's half interest in the community property is not, in the court's words, "a mere expectancy during the marriage . . . . The title of half the community property is vested in the wife the moment it is acquired by the community". 160 La. 813, 107 So. at 588. The court acknowledged that some opinions of the Louisiana courts had expressed the view that the wife's half interest was "revocable and fictitious", but declared that view to be contrary to the provisions of the Civil Code and to the rule announced in every decision of the Louisiana Supreme Court since the error was first committed in *Guice v. Lawrence*, La.Sup.Ct.1847, 2 La.Ann. 226. The *Guice* court was misled, according to *Phillips*, by incorrectly translating the Spanish word *dominio*, used by the commentator Febrero to describe the authority of the husband over the entire community as ownership rather than control.

In dictum, the *Phillips* court discussed whether a husband can satisfy personal debts acquired before marriage with property belonging to the community, an issue that has long troubled the Louisiana judiciary. *Phillips* expressed the view that the husband could not satisfy his personal debts in this manner. Nevertheless, the Louisiana courts continued to allow the husband to satisfy his antenuptial debts from community assets until 1968, when *United States Fidelity and Guaranty Co. v. Green*, La.Sup.Ct.1968, 252 La. 227, 210 So.2d 328, was decided. The *Green* decision was severely criticized; the Louisiana Supreme Court granted certiorari in *Creech v. Capitol Mack., Inc.*, La.Sup.Ct.1973, 287 So.2d 497, to reconsider this issue. *Creech* held that a husband can satisfy personal debts incurred before the marriage from community assets, *if* he accounts for this enrichment of his separate estate when the community is dissolved. 287 So.2d at 508–10. Thus, the *Creech* court reversed *Green*, and in so doing, rejected the dictum contained in the *Phillips* decision.

█ Louisiana law allows a creditor to seize the property of the debtor to satisfy his claim. La.Civ.Code Arts. 3182, 3183. To establish what is part of the husband-debtor's "patrimony" and is therefore subject to seizure by the creditor, the *Creech* court looked to the relative interests of the husband and wife. Justice Barham, for the court, upheld the wife's present ownership but characterized the wife's share as an "imperfect ownership".[8]

287 So.2d at 508–09.

█ Contrary to the taxpayers' interpretation, the court spelled out clearly that the wife is a present owner and not an

---

8. Justice Barham, said:

We feel it necessary to be more precise in expressing the interest of the wife in the community of acquets and gains during the existence of the marital regime. That interest is more than a mere expectancy or a mere right to inherit. Febrero says the wife has *dominion*, but Febrero also says the wife does not have the *use* of the community or even of her one-half interest. The wife does have dominion, but since use and control are necessary ingredients of perfect ownership, that dominion or ownership which the wife has falls short of perfect ownership. . . .

The wife then owns an interest in the community, but the ownership of that interest does not consist of ownership of particular assets, or of a particular one-half of the community. In the relationships *between husband and wife* the husband owns one-half of the individual assets of the community in perfect ownership. Civil Code Article 491. He also has the *administration* (use and enjoyment) of the other one-half with power of alienation. The wife owns one-half of the individual assets of the community in imperfect ownership. Civil Code Article 492. Her ownership becomes perfect on dissolution of the community. Insofar as *third persons* are concerned (e. g., creditors) during the existence of the community property regime the husband owns the individual assets of the community. The assets and liabilities of the whole community are considered the patrimony of the husband during the marriage. The wife's patrimonial interest in the community is the imperfect ownership with the above enumerated acquired rights and other rights which flow from the marital contract or by effect of laws treating of the rights and obligations of the spouses during marriage. (Emphasis of the court.)

expectant heir.[9] In civil law, perfect ownership includes the right to use (*usus*), to enjoy (*fructus*), and to dispose of one's property (*abusus*). La.Civ.Code Art. 491. *See* Yiannopoulos, Louisiana Civil Law Treatise (Property) § 1 (1968). Imperfect ownership occurs when one of the three elements of *usus, fructus,* and *abusus,* is subject to another's rights. Because the Louisiana husband in his role as head and master of the community of gains has the sole use and control of the community assets, as well as the enjoyment and the power to dispose of those assets, he has perfect ownership. The wife, lacking an element of perfect ownership, the use or control of the community assets, is described as an imperfect owner. Whether denominated perfect or imperfect, the wife's interest in one-half the community property is, under Louisiana law, one of ownership. Moreover, as the Supreme Court explicitly stated in *Mitchell,* the husband's control over the assets does not negate the wife's ownership of one-half the community property for federal tax purposes. 403 U.S. at 203, 204, 91 S.Ct. 1763.

Cases decided after *Creech* reaffirm the wife's ownership interest in one-half the community. In *T. L. James and Co. v. Montgomery,* La.Sup.Ct.1976, 332 So.2d 834, 843, the court stated:

"Although the husband is, by the articles of the Code, placed at the head of the partnership, the status of the wife as a partner and her ownership of half of the community property from the instant of its acquisition is unaffected . . . the wife's one-half interest is at all times real, vesting in her the right to dispose of her interest by will and giving her the right to demand her one-half interest upon dissolution of the marriage for any cause."

The Louisiana Legislature, to clarify but not to change the law, amended the code:

"Each spouse owns the present undivided one-half share in the community subject to the management of the community by the husband in accordance with the rights and restrictions provided by law."

La.Civ.Code Art. 2398 (1976).

■ In sum, there is no doubt that a Louisiana court would hold that each taxpayer owned one-half of the community property, including the husband's earnings. We must apply Louisiana law as we find it.[10]

### III.

In Louisiana, "[t]he husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife." La.Civ.Code Art. 2404. Ms. Hansen attributes her difficulties to this "head and master" provision. She is right. She urges us to strike down Article 2404 of the Civil Code as violative of the equal protection clause of the Constitution. *But see Kirchberg v. Feenstra,* E.D.La.1977, 430 F.Supp. 642; *cf. Corpus Christi Parish Credit Union v. Martin,* La.Sup.Ct.1978, 358 So.2d 295. The constitutionality of the head and master provision is not properly before us on this appeal. If it were, a determination that the provision is unconstitutional would mean that the wife would have greater control over community income. Unfortunately for the taxpayer wives, that would strengthen the case against them.

The taxpayers are foreclosed from contending that the broad managerial powers given to the husband by the Civil Code

9. Commentators agree that the *Creech* Court upholds the wife's present ownership of one-half of the community. *See generally,* Comment, *Community Property Symposium,* 48 Tul.L.Rev. 618 (1974); Note, 34 La.L.Rev. 874 (1974); Comment, 20 Loyola L.Rev. 355 (1974).

10. *See generally,* Pascal, *Updating Louisiana's Community of Gains,* 49 Tul.L.Rev. 555 (1975);

Note, *Federal Tax Liability of the Wife for Community Income Earned by the Husband,* 32 La.L.Rev. 471 (1972); Comment, *Income Tax Louisiana Wife's Liability,* 17 Loyola L.Rev. 767 (1971); Note, *Nature of the Wife's Interest During the Existence of the Community,* 25 La.L.Rev. 159 (1964).

make the wife's ownership of the community a fiction. The United States Supreme Court rejected this argument in *Mitchell* and in *Bender*. In the Court's view, the head and master provision relates only to the administration of the community; it does not alter the fact that the wife owns a one-half share of the community. The Court noted, in particular, that the Louisiana wife can demand a reimbursement when she sues for a separation and an accounting if her husband has enriched his estate at her expense by fraud. *Bender, supra*, 282 U.S. at 131–32, 51 S.Ct. 64; *Mitchell, supra*, 403 U.S. at 203–04, 91 S.Ct. 1763.

Ms. Hansen appears to argue that *Bender* and *Mitchell* are not controlling law on this point because the constitutionality of the head and master provision was not considered in those cases. To the extent that the taxpayer's attack on the constitutionality of this provision can be construed as a constitutional attack on the taxing power, and thus is properly before us, we are, nevertheless, bound by a long line of Supreme Court decisions holding that ownership *vel non* is a sufficient and constitutional basis for imposing federal tax liability. *See, e. g., Poe v. Seaborn*, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.[11]

IV.

In Louisiana, the husband is responsible for community debts, and the wife is not personally liable out of her separate property for such obligations. *See Poindexter v. Louisiana & A. Ry. Co.*, La.Sup.Ct. 1930, 170 La. 521, 128 So. 297; *Smith v. Viser*, La.App.1960, 117 So.2d 673; *Rouchon v. Rocambra*, La.App.1956, 84 So.2d 873. The rationale for subjecting the husband to this liability does not stem from the husband's ownership interest in the community; it stems, rather, from his control as head and master of the community. Under Louisiana law, a wife is not even a proper party defendant in an action to collect a community obligation. La.Code of Civil Proc. Article 735 (1960). Thus, in the instant case were the debt owed to a state creditor rather than to the United States the taxpayers would prevail.

An exempt status under state law, however, does not affect the taxpayers' federal liability. The *Mitchell* Court faced a similar issue. In that case, one of the taxpayers took advantage of the codal provision permitting the wife to renounce the community upon its dissolution. The effects of such a renunciation under state law are that the wife receives none of the assets of the community and is not liable for any community debts. La.Civ.Code Arts. 2410, 2411. The circuit court held for the taxpayers in *Mitchell* in part because it thought that the renunciation of the community also precludes a wife's liability for tax deficiencies on community income. *Mitchell v.*

---

11. In addition, Ms. Bagur argued on appeal that *Mitchell* is factually distinguishable from her case because she did not live with her husband during some of the taxable years in question. She asserts that the principle of equal ownership in the community of gains stems from the assumption that the husband and wife work together, an assumption that is undermined when the spouses live apart. Physical separation, however, does not alter the principles of community ownership. Mrs. Bagur's legal interest in the community ceases only with the judicial dissolution of the marriage.

We also reject Ms. Bagur's contention that her constitutional rights were violated when she was relegated to the Tax Court. She insists, first, that requiring a taxpayer to pay the deficiency as a precondition to litigating in the district court is a denial of due process of law. Her objection to this procedure, we assume, is that it discriminates against indigents. In establishing the Tax Court, Congress has provided the taxpayer with the choice of two remedies. Absent a clear showing that the substantive result would differ depending on the forum, the choice of remedies is not constitutionally infirm. Ms. Bagur also contends that relegating her to the Tax Court deprived her of a trial by jury, in violation of the Seventh Amendment, and of a decision by a judge familiar with Louisiana law. A taxpayer, however, has no constitutional right to a trial by jury in a refund suit whether brought in the district court or in the Tax Court. *See Wickwire v. Reinecke*, 1927, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; *Phillips v. Commissioner*, 1931, 283 U.S. 589, 599, n.9, 51 S.Ct. 608, 75 L.Ed. 1289. And we know of no constitutional right to a trial before a judge of a particular state.

*Commissioner of Internal Revenue Service,* 1970, 430 F.2d 1, 5. The Supreme Court reversed. Following the well-established rule of *Burnet v. Harmel,* 1932, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, that "state law creates legal interests but the federal statute determines when and how they should be taxed", the Court declared that "an exempt status under state law does not bind the federal collector". 403 U.S. at 204, 91 S.Ct. at 1771.

### V.

We turn now to the possibility of affording a measure of relief for the two taxpayers who suffered from their husbands' abuse of authority as head and master of the community.

 The term "theft" as used in the statute is defined broadly to encompass all criminal appropriations of another's property. *See Edwards v. Bromberg,* 5 Cir. 1956, 232 F.2d 107, 110; Treas.Reg. § 1.165–8(d). A taxpayer is not foreclosed from claiming a theft loss deduction even though he is closely related to the thief. Indeed, the crime of embezzlement often presupposes a special relationship of trust between the victim and the thief. Scott & LaFave, *Criminal Law,* 455 (1966). For example, a deduction was allowed when money was entrusted to a faithless trustee and, thereafter, appropriated by the trustee for his own use. *Vincent v. Commissioner of Internal Revenue,* 9 Cir. 1955, 219 F.2d 228, 231. It was allowed when a taxpayer was forced to pay a sum of money for the return of securities withdrawn by the taxpayer's son for his own use. *Earle v. Commissioner of Internal Revenue,* 2 Cir. 1934, 72 F.2d 366. Again, when a wife, the co-owner of a joint bank account with her husband, withdrew money from the account in circumstances constituting embezzlement, a theft loss was allowed. *Saul M. Weingarten,* 1962, 38 T.C. 75. To our mind, a taxpayer-wife who owns income that is appropriated by her husband-manager for his own use should be permitted to claim similar tax treatment.

 The Commissioner concedes that the taxpayers may have sustained a loss. He insists, however, that loss cannot be categorized as a theft, and thus is not deductible, because the Louisiana head and. master provision makes a theft by the husband impossible. That does not settle the question of the taxpayer's liability under *federal* law.

 Because the elements of theft vary with the criminal statutes of each state, the question whether a theft loss has been sustained is determined by reference to the criminal law of the jurisdiction where the loss occurred. *Monteleone v. Commissioner,* 34 T.C. 688, 692. In Louisiana, theft is defined as

> "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."

La.Rev.Stat. § 14:67. This definition of theft is broad enough to cover the situation before us. A theft occurs when anything of value "which belongs to another" is taken without his or her consent. The Commissioner admits, of course, that one-half of the community income belonged to the wife—that is why she is liable for the taxes in the first place—and that a portion of this income was taken by the taxpayer's husband without her consent.[12]

The Commissioner contends, however, that this definition of theft contained in the Louisiana statutes must be read together with Article 2404 of the Louisiana Civil Codes. Article 2404, the head and master provision, permits the husband to dispose of

---

12. Louisiana, as opposed to most common law states, recognizes that property belongs to "another" even though the property is jointly owned by the thief and the victim. *See, e. g.,* *State v. Morales,* La.Sup.Ct.1970, 256 La. 940, 240 So.2d 714; *cf. McVay v. McVay,* La.App. 1975, 318 So.2d 660.

the wife's half share of the community without her consent. Logically, therefore, a husband cannot be prosecuted for theft in Louisiana for appropriating community property owned by the wife without her consent. If the husband's acts would not form the basis for a criminal suit in Louisiana, the Commissioner argues, they cannot form the basis for a federal theft loss deduction either.

■ We have no quarrel with the Commissioner's assertion that the taxpayers' husbands would not be subjected to criminal prosecution in Louisiana on the facts before us. We have found no Louisiana cases discussing a husband's criminal liability for misappropriating community assets. The Civil Code does provide a civil action to the wife against her husband for reimbursement for fraudulent disposition of community assets upon dissolution of the community. But to prevail, the wife must prove that the disposition was made with "an intent to injure the wife". Article 2404. Moreover, the fraudulent disposition must be intentional and the motive for the transaction. *See Thigpen v. Thigpen*, La.Sup.Ct. 1956, 231 La. 206, 91 So.2d 12.

■ *The issue before us now, however, is not whether the taxpayer's husband should be punished as a thief under state law but whether the taxpayer should be allowed a tax loss as the victim of a theft under the federal tax law.* The courts' resort to state law to define theft in determining whether a loss is deductible under the federal tax laws is a rule of convenience. As the Commissioner reminded us earlier in connection with the taxpayer's liability for the taxes, an exempt status under state law does not bind the federal collector; federal law determines when and how legal interests created by the state are taxed. The impossibility of treating a husband as a thief of community assets in Louisiana, by virtue of his powers as head and master of the community, is only one of the consequences that flow from the princi-

ples of the Louisiana community property system. The federal tax laws have not hesitated to disregard similar consequences resulting from the creation of the community of gains, such as the husband's liability under state law, also because of his role as head and master, for all community debts. And just as this state "exemption" of the owner-wife from liability out of her separate income for community debts does not defeat the federal collector in his suit for the taxes on her share of the community income, the state "exemption" of the manager-husband from prosecution for theft should not defeat the federal taxpayer's claim for a theft loss deduction.

■ The Louisiana theft statute is explicit that an "intent to deprive the other permanently" of whatever is the subject of the taking "is essential". La.Rev.Stat. § 14:67. The Commissioner questions whether a husband in the Louisiana community property system can ever be said to possess criminal intent in disposing of community assets. True, mismanagement of community income does not alone suffice to establish a theft loss. Spending community assets by a poor manager in an effort to sustain the community, even at the husband's sole discretion, does not constitute a theft. As we said in *Bodzy v. Commissioner of Internal Revenue*, 5 Cir. 1963, 321 F.2d 331, a theft loss deduction cannot be sustained when partnership assets are dissipated by a partner with poor business judgment. We hold, however, that an intent to deprive a wife permanently of her share of the community income may be inferred from a husband's wanton appropriation of community assets in pursuit of his own pleasure or needs.

There is no legally satisfactory way to resolve these cases. The solution we propose is in keeping with the realities. We are looking at substance, not form. That is the way the Supreme Court looked at *Corliss v. Bowers* and *Helvering v. Horst*.[13]

---

**13.** In *Lucas v. Earl*, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, involving an assignment of earnings valid under state law, the Court held that salaries are taxed to those who earned them. There is no reason to distinguish assignment by private agreement from assignment by

We are in line with the Louisiana doctrine that a wife owns a present, vested ownership of half of the community. We are in accord with *Mitchell.* We are not in disagreement with *Phillips* or *Creech.* We agree with *James.* The decision does not effect Louisiana criminal law. We do no violence to the Louisiana Civil Code. We believe that our decision is reconcilable with another and different kind of Code, the Internal Revenue Code.

 We remand the cases to the Tax Court for development of the facts to determine in each instance whether the husband appropriated his earnings to his own purposes in such a way as to be the equivalent of a theft of the wife's ownership of one-half of the earnings, a loss deductible under I.R.C. § 165(c)(3), and, if so, the amount of the deduction and the year or years in which each taxpayer is entitled to claim a loss.[14]

REMANDED.

CHARLES CLARK, Circuit Judge, concurring:

I am indebted to Judge Wisdom for his scholarly discussion of Louisiana law and for the ingenious approach he has devised to bring a measure of reason out of gross injustice. I concur in all he writes. I add this brief postscript only to emphasize that I would go one step further.

The tax demanded is a federal tax imposed on income. Even though State law attributes income to these women, the federal law knows they never saw it, received it or benefited from it. As Judge Wisdom points out, the law of theft is discrete for federal tax and State criminal law purposes. By the same reasoning process, I

would insist that the substance of reality mandates that this federal harassment merely to enforce the technical form of State civil law must stop forthwith.

---

operation of law. *Bender v. Pfaff,* 282 U.S. 127, 51 S.Ct. 62. The principle established in *Lucas v. Earl* has been upheld in cases involving family partnerships. *Luthaus v. Commissioner,* 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; *Commissioner v. Tower,* 1940, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670.

**14.** Theft losses are deductible in the year that the theft is discovered. I.R.C. § 165(e). The records in the cases before us do not indicate

when the taxpayers discovered their loss. In addition, I.R.C. § 6511(a) provides that a claim for refund or overpayment of tax be paid within the latter of three years from the time the return for the year in question is filed or two years from the time the tax is paid.