Mary Ellen BRENT, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 79–1267.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., Crombie, J. D. Garrett, R. Bruce Johnson, Gilbert E. Andrews, Act. Chief, Appellate Section, Gilbert S. Rothenberg, Chief Counsel, N. Jerold Cohen, Internal Revenue Service, Washington, D. C., for respondent–appellant.

Joel A. Mendler, New Orleans, La., for petitioner–appellee.

Before HILL, RUBIN and ANDERSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Once again we consider the plight of a Louisiana ex–wife who is assessed with an income tax deficiency on one–half of that part of her former husband's community earnings received by him prior to the termination of the marital community and never paid to her. Concluding that Louisiana law made the income belong to the spouses in equal shares and, therefore, permits the imposition of the tax, we reverse the contrary conclusions of the Tax Court, 70 T.C. 775, and remand for further proceedings.

I.

Mrs. Mary Ellen Brent and Dr. Walter H. Brent, Jr. were married in 1950 in Louisiana, where they resided throughout their marriage. They separated informally in 1967. On January 17, 1968, Mrs. Brent filed suit for divorce. On March 26, 1970, Dr. Brent in turn filed suit for divorce. The two suits were consolidated for trial. On December 9, 1971, a final judgment was rendered granting Dr. Brent's petition. Mrs. Brent's 1968 action was dismissed.

Both the Brents were on a calendar year basis. On his 1970 tax return, which was apparently timely filed on April 15, 1971, while both suits were still pending, Dr. Brent reported net income from his medical practice of $75,207.51 and investment income of $1,348.87. He excluded one–half of the total income as being owned by his wife. However, the only money he delivered to her was $4,800 as alimony pendente lite. Mrs. Brent did not have access to her husband's financial records and did not receive a copy of his 1970 tax return. In 1972, she filed a separate 1970 tax return that did not include any of the community income.

The Commissioner determined that Dr. Brent's income for 1970 was community property under Louisiana law and that Mrs. Brent was taxable on one–half of it. He assessed a penalty for failure to file a timely return under 26 U.S.C. § 6651(a). The Tax Court held that, under Louisiana law, the divorce decree terminated Mrs. Brent's ownership rights in her husband's income retroactively to March 26, 1970, when the second petition for divorce was filed, and she was, therefore, not taxable on any part of the income thereafter earned by Dr. Brent. It found a tax deficiency based on

her one–half share of the income earned prior to March 26, 1970. The Commissioner appeals from that part of the decision holding that Dr. Brent's income from March 26, 1970, to December 31, 1970, was not community income.

## II.

Judge Wisdom's scholarly opinion in *Bagur v. Commissioner*, 603 F.2d 491 (5th Cir. 1979), explains the fundamental concepts of the Louisiana community property system as it was applied during the period from Louisiana's adoption of its first civil code in 1803[1] until 1979, when Louisiana adopted the Matrimonial Regimes Law, La.Civ.Code Ann. arts. 2325–2376 (West 1971 & Supp. 1980). The wife had a present, vested, undivided one–half ownership of the property acquired during the marriage, including her husband's earnings.[2]

It has been difficult, however, for Congress and the IRS to fit the civilian property system into a tax structure based essentially on common law principles of property and special tax principles based on control not formal title. *Bagur*, 603 F.2d at 494. Therefore, Louisiana's courts began to explain the community property system in terms that permitted division of income for tax purposes. *See Phillips v. Phillips*, 160 La. 813, 107 So. 584 (1926), *discussed in Bagur*, 603 F.2d at 494 n.3.

When married taxpayers were permitted by the Revenue Act of 1948, 62 Stat. 110, 114, to file a joint return, treating the income of each spouse as if it were earned one–half by each, Louisiana residents and other married persons in states with similar community property laws ceased to enjoy the tax advantage that had previously resulted from Louisiana's community property recognition of each spouse's interest in community earnings of the other spouse as "vested . . . the moment it is acquired," *Phillips v. Phillips*, 160 La. 813, 825, 107 So. 584, 588 (1926). However, the state's property system was not altered, either by judicial decision,[3] or, until 1979, by statute. Thus, in *Bagur*, we held two wives each presumptively taxable on one–half of her husband's earnings while they were living separate although neither wife had any knowledge of or benefit from her husband's earnings.

Unlike the wives in *Bagur*, Mrs. Brent was divorced from her husband before the tax deficiency was assessed. Article 155 of the Louisiana Civil Code, which for present purposes was substantially the same in 1970 and 1971 as it is today, makes a judgment of divorce "retroactive to the date on which the petition for same was filed."[4] The sole question before us is whether this difference requires a different result.

1. There were slight modifications. *See* H. Daggett, The Community Property System of Louisiana (1945); Comment, The Nature of the Wife's Interest During the Existence of the Community, 25 La.L.Rev. 159 (1964).

2. We use the past tense but spouses still are subject to a similar system of co–ownership unless they elect otherwise. La.Civ.Code Ann. arts. 2378, 2336 (West Supp. 1980).

3. *Bagur* disposes of the argument that Louisiana decisions such as *Creech v. Capitol Mack, Inc.*, 287 So.2d 497 (La.1973), modify the principle that "the wife is a present owner and not an expectant heir." 603 F.2d at 498–499.

4. In 1970 and 1971 the article read:
The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorneys' fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re–established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled, but which act shall be without prejudice to rights validity acquired in the interim between rendition of the judgment and recordation of the act of reconciliation. By its terms Article 155 applies only to a separation from bed and board but divorce has the same effect. La.Civ.Code Ann. art. 159 (West 1972); *Malone v. Malone*, 260 La. 759, 257 So.2d 397, 398 n.2 (1972); *see also* Rev.Rul. 74–393, 1974–2 C.B. 28, 29.

■ Under the terms of Article 155, if a divorce is granted, the earnings of the husband during the pendency of the suit become his exclusive property; his wife can claim no ownership interest in them. *See Roberts v. Roberts*, 325 So.2d 674 (La.App. 1976); *Foster v. Foster*, 246 So.2d 70 (1971) *app. denied*, 258 La. 774, 247 So.2d 867 (1971); *Aime v. Hebert*, 254 So.2d 299 (La. App.1971).[5] On the other hand, if the action fails for any reason to result in a final judgment in favor of the petitioner, it has no effect on the husband's earnings and they remain community property.

Mrs. Brent's suit was pending in the calendar years 1968, 1969 and 1970. It admittedly had no effect on ownership of Dr. Brent's income because it was eventually dismissed on December 9, 1971. Whether or not Dr. Brent's 1970 earnings were exclusively his or belonged in moiety to his wife could be determined only by an event that did not happen in 1970 and had not happened by the time he was required to file his 1970 tax return. Based on events that had happened before the end of the year 1970, Mrs. Brent had the right to one–half of Dr. Brent's 1970 income just as she had the right to a share of his 1969 and 1968 income. This right was not affected by the pendency of either Mrs. Brent's or Dr. Brent's separate suits.

■ As a result of an event that happened after the end of the tax year, Mrs. Brent's right to one–half of her husband's income was extinguished. However, our tax system operates on an annual basis. The taxability of income must be determined each year, with adjustments generally made in later years on the later year's returns. Mrs. Brent asserts that she had no access to her husband's financial information

tion or tax return to determine the amount of income for 1970. Because she was required by federal law to file a return on April 15, 1971, when she was still married to Dr. Brent, she probably had a right to examine the records of his earnings during the period when the community was still in existence.[6] The record contains no indication concerning why discovery was not available to her incident to her own then–pending suit. While we are satisfied that she lacked knowledge of the facts, we do not think that they were inaccessible. In this respect at least she was in a better position to learn the truth than the two wives in *Bagur*.

The Tax Court was concerned about the unfairness to the wife of this result. Judge Charles Clark of this court has manifested an even deeper concern, *see Bagur*, 603 F.2d at 503 (C. Clark, J., concurring), and we share his sympathy with the predicament of the wife who finds herself painted into a costly tax corner. Once again we call to the attention of the IRS and the Congress the need for reconsideration of the present policy for those spouses who may in the future, despite the changes in Louisiana law, be similarly entrapped.

■ However, our role in tax litigation is to adhere to the terms of statutes whose burdens may not always be equitable. The doctrine that money received under a claim of right must be reported as income even though it must be restored to another after the end of the tax year[7] imposes similar hardships. These inequities are the result of the congressionally imposed annualization of income. The taxpayer who, like Mrs. Brent, may be required to report income in one year may have deductions in a

---

5. The wife's earnings while living separate and apart from her husband are her separate property whether or not they are ever judicially separated or divorced. La.Civ.Code Ann. art. 2334 (West 1971 & Supp. 1980).

6. *See* Comment, Is a Louisiana Wife Liable for Federal Income Taxes on Income Earned by Her Husband Pending a Judgment of Separation?, 23 Loy.L.Rev. 98, 103 n.36 (1977).

7. *North American Oil Consolidated v. Burnet*, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932); *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931). This is the result even though events in subsequent years may prove that the taxpayer in fact had no right to that income and was required to return it. *Healy v. Commissioner*, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953); *United States v. Lewis*, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed.2d 560 (1951).

later year for what proved not truly to be income.[8] Because her taxable income in the later year may be substantially less, the net effect of the two offsetting entries may be a loss in tax dollars.

There is no practical way for the tax collector to know that a married person who files a tax return is party to a separation or divorce proceeding. Even if that fact were known, the levy of an assessment against the husband would be improper if the suit were dismissed or terminated without a decree favorable to the plaintiff. Statutory modification of the annualization principle is required if the inequity of the present system is to be avoided without loss of tax revenue.

Taxation of the wife for one–half the income is commanded by the logic of *United States v. Mitchell*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). The Supreme Court there held a married woman domiciled in Louisiana personally liable for federal income taxes on her one–half interest in community income realized during the existence of the community notwithstanding her later renunciation of the entire community.[9]

The Tax Court accuses the Commissioner of tenacious adherence to state law. Such

---

**8.** The proper procedure is not to amend the earlier return, but to take a current deduction for the repayment, although under 26 U.S.C. § 1341, the amount by which the deduction will reduce the taxpayer's current liability may be calculated from the return for the earlier year. The justification for this system was stated by the Supreme Court in *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 365, 51 S.Ct. 150, 152, 75 L.Ed. 383, 388 (1931):

> It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.

The annual accounting concept is thus an integral part of our system of taxation and variances therefrom cannot be tolerated merely because "so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer." *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725, 729 (1944).

**9.** *Cf. Redmon v. United States*, 471 F.2d 687 (6th Cir. 1972), where Kentucky law, requiring a divorced wife to restore property acquired from her husband during marriage, did not relieve the wife from income tax liability on income and capital gains realized on the property while she held it; *Wallace v. United States*, 439 F.2d 757 (8th Cir.), *cert. denied*, 404 U.S. 831, 92 S.Ct. 71, 30 L.Ed.2d 60 (1971), where a husband was required to include already earned dividends in his income notwithstanding a divorce court's order transferring these dividends to his wife; *Daine v. Commissioner*, 168 F.2d 449 (2d Cir. 1948), where a divorce decree, entered *nunc pro tunc* as of January 1, 1940, could not change federal tax liability retroactively although it was fully binding on the parties; *West v. Commissioner*, 131 F.2d 46 (9th Cir. 1942), where a state court order vacating a divorce decree "as fully and to the same extent as though the same had never been entered," *id.* at 47, did not alter taxpayer's unmarried status for the prior year for federal tax purposes.

The Tax Court suggested that the Commissioner has recognized that the filing of the petition creates a real change in the marital relationship citing Proposed Treasury Regulations on Income Tax (1954 Code), § 1.1239–1(c), 43 Fed. Reg. 23608 (part 20). This regulation was formally adopted on November 3, 1978, by T.D. 7569, 1978–2 C.B. 216. It provides that a husband and wife shall not be treated as joint taxpayers for purposes of I.R.C. § 1239 if they are legally separated under an interlocutory decree and the decree subsequently becomes final. Accordingly, the operative date is the date of the interlocutory decree, not the date of the filing of a petition for divorce. . The interlocutory decree, unlike the mere filing of a petition, creates a substantial change in the community and may be the most significant date to look to for tax purposes. In the normal course, an interlocutory decree becomes final after a given period of time. Furthermore, section 1239 is a penalty section of the Code that disallows normal capital gains treatment on a sale by a husband or wife to his spouse because such sale is deemed to be made artificially to increase basis. See Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976 651–652, 1976–3 C.B. (Vol. 2) 663–664; S.Rep. No. 938, Part 2, 94th Cong., 2d Sess. 28–31, 1976–3 C.B. (Vol. 3) 643, 670–673. When the sale is pursuant to a valid state divorce decree, this artificiality is obviously absent, and the purpose for the statute no longer exists. The regulation simply provides that the parties may not have to wait the statutory length of time for the divorce to become final before arranging their property settlement, thus preventing Section 1239 from becoming a trap for the unwary.

adherence is not discretionary on his part but mandatory. It is state law that determines property ownership. An assessment of tax against Dr. Brent for 1968 or 1969–or even 1970–could have been resisted by him on the basis that, under Louisiana law, he owned only half the income in each year. Of course, by the time the deficiency was assessed against Mrs. Brent in 1974, the contingencies had all occurred. Dr. Brent might have been assessed for additional tax for 1971, just as Mrs. Brent might have filed (and, for aught we know, may yet be entitled to file) a 1971 return showing a deduction for the income that should have been reported by her in 1970 but was never received. The tax year concept does not permit retroactive adjustments with the benefit of hindsight.

The mere filing of a divorce petition in Louisiana makes no change in the community. Only the divorce decree effects its termination. On December 31, 1970, the community between Mrs. Brent and Dr. Brent was still in existence. On that date she owned one–half of the community income, although her ownership was potentially subject to divestiture, and, in accordance with the annual accounting principle, she was taxable on what she then owned. This is the teaching of *Mitchell*. The final divorce decree was not a pro forma recognition of a state of facts that actually existed on the day the petition was filed. The entry of the final decree was an act of independent significance that terminated the community when it was entered. Although the decree is given retroactive effect, under the annual accounting principle effective in federal tax cases, it did not alter the federal tax treatment of income earned in a prior year.

The briefs submitted to us were written prior to the decision in *Bagur*. We there remanded the cases to the Tax Court for the development of facts to determine whether either wife was entitled to a loss deduction for the tax year under audit. In

the present case there is also the possibility of an amended return for the year 1971. These possibilities were neither briefed nor considered, either before the Tax Court or the Court of Appeals. We, therefore, remand for further proceedings consistent with *Bagur* and this opinion.[10]

REVERSED AND REMANDED.

---

10. The Tax Court must on remand consider the taxpayer's liability for the penalties assessed. While it is premature for us to discuss the issue, we note with approval the sympathy expressed by that court in its prior opinion for the situation of this divorced wife.