MARY F. BEALL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 14793–82, 10835–83.    Filed January 9, 1984.

Mary F. Beall, pro se.
*James J. Everett*, for the respondent.

OPINION

COHEN, *Judge*: Respondent determined deficiencies of $555 and $3,332 in petitioner's Federal income taxes for the years 1978 and 1979, respectively, and additions to tax under section 6653(a)[1] of $28 and $166.60 for those years, respectively. Petitioner contends that she has no liability for those taxes attributable to one-half of wages earned by her husband during the years in issue because she executed a vow of poverty in which her husband purported to convey his earnings to a chapter of the Life Science Church. Petitioner also contends that, because she in good faith filed separate income tax returns on which she reported her own earnings, she is not liable for the additions to tax.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years here in issue.

All of the facts have been stipulated, and the stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner was a resident of Arizona at the time she filed her petitions herein. During 1978 and 1979, petitioner was married to Gerald N. Beall, and they resided in Arizona. Mr. Beall received wages totaling $11,242.31 during 1978 and $32,775.71 during 1979, primarily attributable to employment by Bechtel Power Corp.

On or about October 19, 1976, Mr. Beall purported to convey all of his property and income to "an order of the Life Science Church of Bloomington, Minn., designated as THE ORDER OF ALMIGHTY GOD *1075*, Chapter," in a document entitled "VOW OF POVERTY." The document was signed by Mr. Beall and by Mrs. Beall as "Spouse (If community property State)." The document contained a statement to the effect that the gift "will revert to the giver instead of continuing in perpetuity if civil government officialdom were to 'void' this act."

Petitioner presented no evidence that Mr. Beall's wages were not taxable income to him, and it is unlikely that she could have done so. See *Stephenson v. Commissioner*, 79 T.C. 995 (1982), on appeal (6th Cir., June 7, 1983); *McGahen v. Commissioner*, 76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir., Sept. 20, 1983); *Kelley v. Commissioner*, 62 T.C. 131 (1974); *Beall v. Commissioner*, T.C. Memo. 1983–252 (determining Mr. Beall's tax liability for the year 1976). She contends, however, that her execution of the vow of poverty extinguished her community property interest in Mr. Beall's earnings and that, therefore, she is not liable for tax on any portion of those earnings.

Arizona law provides that the earnings of either spouse are community property, and each spouse has an equal one-half interest in those earnings. Ariz. Rev. Stat. Ann. sec. 25–211 (West 1976); *Goodell v. Koch*, 282 U.S. 118 (1930). A married person is taxable on the earnings of his or her spouse to the extent that he or she has a vested ownership interest in the spouse's earnings. *United States v. Mitchell*, 403 U.S. 190, 196–197 (1971); *Edwards v. Commissioner*, 680 F.2d 1268 (9th Cir. 1982), affg. an unreported decision of this Court.

Arizona law permits spouses to enter into an agreement whereby subsequent earnings of either spouse will remain the separate property of the spouse earning the income, and such

agreement, if valid under Arizona law, will be recognized for tax purposes. *Shoenhair v. Commissioner*, 45 B.T.A. 576 (1941); *Naegle v. Commissioner*, T.C. Memo. 1965–212, affd. on another issue 378 F.2d 397 (9th Cir. 1967). The burden of proving such a valid agreement, however, is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure.

The vow of poverty does not on its face contain any agreement between Mr. and Mrs. Beall but merely reflects a conditional attempt by Mr. Beall to convey his property and income to a third party. Mrs. Beall's signature on that document was apparently deemed necessary because she did, under Arizona law, have a vested interest in one-half of Mr. Beall's income. The vow of poverty itself, therefore, would be no more effective in avoiding Mrs. Beall's liability on that income than it would in avoiding Mr. Beall's liability for taxes on that income under the cases cited above.

In any event, petitioner has not presented evidence that her execution of the vow of poverty was intended by her to be a waiver of all future interest in her husband's earnings under circumstances that would make the agreement binding on her under Arizona law. See *In Re Estate of Harber*, 104 Ariz. 79, 449 P.2d 7 (1969). This case is totally distinguishable from the *Shoenhair* case, for example, where the taxpayer showed that:

> The * * * agreement was strictly adhered to and carried out by petitioner and her husband throughout the years 1936 and 1937. Each of them maintained a separate bank account and neither of them exercised any right, dominion, or control over the income, bank account, or financial affairs of the other, but, instead, treated their respective income and property as their separate property, respectively. [*Shoenhair v. Commissioner, supra* at 577.]

Mrs. Beall does not deny that she and her husband continued to support themselves in the same manner after the execution of the vow of poverty as they did before. She has totally failed to satisfy her burden of proving that there was an agreement between her and Mr. Beall, effective during the years in issue, in the form of the vow of poverty or otherwise, in which she effectively abrogated her community property interest in his earnings.

Even if we were to infer that petitioner filed her separate returns reporting her wages in good faith, we would have to conclude that the underpayment of tax was due to negligence.

The law requiring petitioner to report as income her share of her husband's earnings is well established and applied even where the result seems inequitable. See *United States v. Mitchell, supra; Brent v. Commissioner,* 630 F.2d 356 (5th Cir. 1980); *Bagur v. Commissioner,* 603 F.2d 491 (5th Cir. 1979). We find no inequity where she continued to share the fruits of his earnings.

As to purported reliance on the vow of poverty, petitioner was obviously aware that she realized the same control over, and benefit from, the income as before. As stated in *United States v. Basye,* 410 U.S. 441, 450 (1973):

The principle of Lucas v. Earl [281 U.S. 111 (1930)], that he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle, has been repeatedly invoked by this Court and stands today as a cornerstone of our graduated income tax system.* * *

The additions to tax must be sustained because we can only conclude that "no reasonable person would have trusted this scheme to work." *Hanson v. Commissioner,* 696 F.2d 1232, 1234 (9th Cir. 1983).

*Decisions will be entered for the respondent.*